BANK SOUTH LEASING, INC., a
Georgia Corporation,
Plaintiff-Appellee,

v.

James R. WILLIAMS and Julius M.
Garner, Defendants-Appellants.

BANK SOUTH LEASING, INC., a
Georgia Corporation,
Plaintiff-Appellant,

v.

FLORIDA NATIONAL BANK OF ORLANDO, a National Banking
Association, Defendant-Appellee.

BANK SOUTH LEASING, INC., a
Georgia Corporation,
Plaintiff-Appellant,

v.

James R. WILLIAMS, Julius M. Garner,
Florida National Bank of Orlando, a
national banking association, Defendants,

and

Allen G. MacArthur,
Defendant-Appellee.

Nos. 84–3274, 84–3275 and 84–3350.

United States Court of Appeals,
Eleventh Circuit.

Sept. 3, 1985.

[*] Judge Joseph W. Hatchett recused himself and did not participate in this decision.

**1498**

Arthur J. Ranson, III, Orlando, Fla., for Williams and Garner.

Guy B. Bailey, Jr., Mercedes C. Busto, Miami, Fla., for Bank South Leasing, Inc.

William G. Cooper, Jacksonville, Fla., for Florida Nat. Bank of Orlando.

Before VANCE, ANDERSON* and HENLEY**, Circuit Judges.

PER CURIAM:

This case is a consolidation of three appeals taken from the district court's judgment in a diversity action that includes both contract and fraud claims. The district court by written order has retained jurisdiction in the case for purposes of considering the appropriateness and amount of attorneys' fees. Because we conclude that the unresolved questions about attorneys' fees deprive the district court's judgment of finality, we dismiss these appeals for want of appellate jurisdiction.

## I. FACTS AND PRIOR PROCEEDINGS

The underlying dispute in this case revolves around an arrangement between two individuals and a bank to finance a third party in manufacturing and distributing ice machines. Bank South Leasing, Inc. ("Bank South") advanced funds to Polar Chips International, Inc. ("Polar Chips"), and took title to ice machines Polar Chips was to manufacture. By the arrangement, Bank South then leased the machines to two individuals, Williams and Garner, who in turn subleased them back to Polar Chips. In practice, Polar Chips was to keep the machines and place them with various businesses. Polar Chips would then collect rentals and make pay-

---

* Judge Anderson recused himself after oral argument in this case. This opinion is rendered by a quorum of the panel.

** Honorable J. Smith Henley, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

ments to Williams and Garner, who in turn would pay Bank South under the lease agreement.

Before paying for the machines, Bank South asked a second bank, First National Bank of Orlando ("FNBO"), about Polar Chips' credit history and received a generally favorable and accurate report from MacArthur, who was president, chairman, and chief executive officer of FNBO. MacArthur, however, was also a personal friend of a Polar Chips principal. In rendering his credit report, MacArthur omitted to tell Bank South of substantial and consistent overdrafts by Polar Chips in the two months immediately preceding Bank South's credit inquiry.

Polar Chips failed to manufacture and place the ice machines and defaulted on its obligation under the sublease to Williams and Garner, who in turn failed to make the payments required of them to Bank South. Bank South filed two actions in federal district court, the first against Williams and Garner for breach of the lease agreement, and the second against FNBO and MacArthur alleging fraud in connection with the favorable credit report. These actions were consolidated and tried together. At the close of plaintiff Bank South's case, the trial court directed a verdict in favor of FNBO on the fraud claim. The trial continued with respect to the remaining defendants, with the jury returning verdicts in favor of Bank South and against Williams and Garner on the contract claim and in favor of Bank South on the fraud claim against MacArthur. Judgment was entered on these verdicts and, as noted, the district court issued a written order retaining jurisdiction to decide the appropriateness and amount of attorneys' fees.

The appeal in No. 84–3274 was filed by Williams and Garner, who complain that the trial court instructed the jury on a point of law outside the presence of counsel, and who further cite as error the trial court's refusal to give certain requested jury instructions. The second appeal be-

fore us, No. 84–3275, was filed by Bank South. It argues that there was sufficient evidence before the jury to support its claim against FNBO for fraud, and that consequently the trial court erred in directing a verdict on the claim. Finally, Bank South in No. 84–3350 has appealed the denial of its request for interest on the punitive damage award it won from MacArthur. This appeal is unopposed.

Counsel for Bank South and for FNBO separately informed this panel several days before oral argument in these appeals about a recent decision by another panel of this court in the case of *Certain British Underwriters v. Jet Charter Serv. Inc.*, 739 F.2d 534 (11th Cir.1984). The court in that case dismissed an appeal from a grant of summary judgment for lack of finality since the district court had reserved jurisdiction to consider an award of attorneys' fees. We must decide whether the district court's similar reservation of decision in this case requires dismissal of these appeals for want of appellate jurisdiction.

## II. ATTORNEYS' FEES AND FINALITY

The only basis that has been submitted for this court's jurisdiction is 28 U.S.C. § 1291, which provides that "the courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts." We can assume for purposes of these appeals that aside from the undecided questions about attorneys' fees, the district court's judgment is final within the meaning of this statutory provision.

This circuit has adopted a test articulated by the new Fifth Circuit for determining whether a ruling on attorneys' fees is necessary for a judgment to be final:

When attorney's fees are similar to costs or collateral to an action, a lack of determination as to the amount does not preclude the issuance of a final, appealable judgment on the merits. When, how-

ever, the attorney's fees are an integral part of the merits of the case and the scope of relief, they cannot be characterized as costs or as collateral and their determination is a part of any final, appealable judgment.

*McQurter v. City of Atlanta,* 724 F.2d 881, 882 (11th Cir.1984) (citations omitted) (quoting *Holmes v. J. Ray McDermott & Co.,* 682 F.2d 1143, 1146 (5th Cir.1982), *cert. denied,* 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983)). Whether attorneys' fees are "collateral to an action" or instead are an "integral part of the merits of the case" depends on the circumstances of each case. *See McQurter,* 724 F.2d at 882.

The court concluded in *Holmes* that the attorneys' fees award "was not uniquely separable from the merits but was bound hand in hand with them." *Holmes,* 682 F.2d at 1147. In reaching this conclusion, the court emphasized that the plaintiff had requested attorneys' fees as part of his damages, and also that the jury had been charged on the issue of attorneys' fees and had returned a verdict awarding the fees. *Id.* In *McQurter,* however, the question of attorneys' fees was considered to be collateral because the case arose under 42 U.S.C. § 1983, and the United States Supreme Court had earlier ruled that attorneys' fees are collateral in a § 1983 action. 724 F.2d at 882 (citing *White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982)).

Two recent cases have further clarified the circumstances in which attorneys' fees will be considered an integral part of the merits of the case. In *Certain British Underwriters v. Jet Charter Serv., Inc.,* 739 F.2d 534 (11th Cir.1984), attorneys' fees were awarded in a diversity action brought under a Florida statute providing

that "compensation or fees of the attorney shall be included in the judgment or decree rendered in the case." *Id.* at 534–35 n. 1. Since a Florida appellate court had interpreted the statutory language to make attorneys' fees an element of damages, this court treated the fees as integral to the merits and a necessary part of any final judgment. *Id.* at 535–36. In *C.I.T. Corp. v. Nelson,* 743 F.2d 774 (11th Cir.1984), this court considered attorneys' fees to which a party was entitled by contract. The court concluded that since the contract made attorneys' fees a part of the compensation for injury on default, the fees were an integral part of the merits of the case. *Id.* at 775.

 In this case, Bank South's lease agreement with Williams and Garner provides that "Lessee shall be liable for all costs, charges and expenses, including reasonable attorney's fees and disbursements incurred by Lessor by reason of the occurrence of any Event of Default or the exercise of Lessor's remedies with respect thereto." Bank South cited this lease provision in its complaint and specifically sought attorneys' fees in its prayer for relief. Since Bank South was entitled to attorneys' fees under its lease agreement and sought them in its complaint, we conclude that the fees are an integral part of the merits in the present case. In reserving decision on the appropriateness and amount of attorneys' fees, the district court therefore deprived its judgment of the finality required for this court to obtain jurisdiction under 28 U.S.C. § 1291.[1]

DISMISSED.

---

**1.** We have found no indication in the record that there is an attorneys' fees question presented in Bank South's appeal in No. 84–3275 from the directed verdict in favor of FNBO, or in Bank South's appeal in No. 84–3350 concerning interest on its punitive damage award against MacArthur. No determination by the district court was sought or obtained under Fed.R.Civ.P. 54(b), however, as would be required for an

appeal of fewer than all the claims in a case presenting multiple claims for relief. Even though the present case is a consolidation of several cases rather than a single action containing multiple claims, Bank South is not relieved of the requirement of obtaining a Rule 54(b) certification. *See Ringwald v. Harris,* 675 F.2d 768, 771 (5th Cir.1982) ("[W]here, as here, there is proper consolidation of causes that could

have been filed as a single suit, and the consoli-
dation is clearly for all purposes, the provisions
of Rule 54(b) must be complied with notwith-
standing that the judgment or order in question
disposes of all the claims and parties in one of
the original actions.")