Jurldine A. DONALDSON,
Plaintiff-Appellant,

v.

Paul V. CLARK, et al.,
Defendants-Appellees.

No. 85–8270.

United States Court of Appeals,
Eleventh Circuit.

April 22, 1986.

James W. Howard, R. David Ware, Atlanta, Ga., for plaintiff-appellant.

Charles R. Adams III, Ft. Valley, Ga., for Clark.

Alvin McDougald, Ft. Valley, Ga., for Harris.

Kathryn Allen, Asst. Atty. Gen., Atlanta, Ga., for Wilcox.

Gregory Homer, Ft. Valley, Ga., for Wilder.

Katherine M. Kalish, Macon, Ga., for Shelley.

* Honorable Anthony A. Alaimo, Chief U.S. District Judge for the Southern District of Georgia,

Before JOHNSON and HATCHETT, Circuit Judges, and ALAIMO *, Chief District Judge.

JOHNSON, Circuit Judge:

This case arose out of a state court domestic relations case that originated in the Superior Court of Peach County, Georgia. In the state court action, 56-year-old plaintiff-appellant Jurldine A. Donaldson was sued for divorce by her 81-year-old husband Jarrell H. Donaldson. They had been married less than one year. While that case was pending, Jurldine A. Donaldson filed the instant case in the United States District Court for the Middle District of Georgia under 42 U.S.C.A. § 1983. The Section 1983 complaint alleged that various individuals conspired to unlawfully expedite the divorce proceedings and restrain plaintiff from visiting and perhaps reconciling with her husband, thereby depriving her of a "liberty" interest without due process of law. The alleged civil conspirators and defendants in this Section 1983 action were: Superior Court of Peach County Judges Walker P. Johnson and Tommy Day Wilcox; State Court Magistrates George W. Harris and John W. Smisson; Deputy Sheriff Joe L. Wilder of the Peach County Sheriff's Department; and private individuals Paul V. Clark, Sara C. Clark, Eugene Shelley, and Ruby Shelley.

The plaintiff voluntarily dismissed Magistrate Smisson and Judge Walker Johnson from the action. The district court issued an order granting summary judgment on behalf of all the remaining defendants. The court also imposed sanctions against plaintiff's attorney under Rule 11 of the Federal Rules of Civil Procedure. This appeal is from the district court's judgment granting summary judgment and awarding sanctions under Rule 11.

I. BACKGROUND

Jarrell H. Donaldson ("Jarrell") was married to Annie Donaldson ("Annie") from 1959 until her death in August 1982. An-

sitting by designation.

nie had a son and daughter by a prior marriage: Eugene Shelley, who married Ruby Shelley; and Sara Clark, who married Paul Clark. Jurldine A. Donaldson ("Jurldine") lived next door to Jarrell and Annie, and worked as a nurse's aide in a nursing home where Annie lived at times during her last few years. To some extent, Jurldine also took care of Jarrell during that time. About a year before Annie's death, Jurldine's husband died and Jurldine moved from Georgia to the State of Washington. She continued to inquire periodically about Annie's health. A few months after learning of Annie's death, Jurldine moved back to Fort Valley, Georgia.

In November 1982, Jarrell conveyed title to his house and ten acres of land to Paul Clark, reserving a life estate to himself. Jarrell executed a general power of attorney to Paul Clark. Jarrell also conveyed all his personal property irrevocably to Paul Clark as trustee to manage, invest, and pay all income to Jarrell, as well as such of the principal as he might need. Finally, Jarrell provided that the corpus of the trust, valued at $92,114, was to be paid to Sara Clark upon Jarrell's death.

Jurldine and Jarrell married in July 1983. At the time of the marriage she was about 55 and he, about 80. Sometime prior to the marriage, Ruby Shelley had told Jurldine about Jarrell's prior conveyances of his property. Shortly after the marriage, Jurldine began to inquire about the prior transfers. In September 1983, Jarrell revoked the power of attorney to Paul Clark; shortly thereafter, Jarrell gave Jurldine a power of attorney. By March 1984, Jurldine had engaged the services of lawyer Robert E. Lanyon and through Mr. Lanyon had requested information from Paul Clark concerning the prior conveyances.

While Jurldine was in Texas during the first week of April 1984, Ruby Shelley took Jarrell to a lawyer who prepared a complaint for divorce, which was filed in the Georgia state court. Jarrell also moved for a protective order restraining Jurldine from coming in, on, or near the home in which Jarrell had a life estate. Judge Walker P. Johnson granted this restraining order and set the matter for a hearing.

Later in April, Jurldine, through lawyer James W. Howard, filed an answer to the divorce complaint. In her answer Jurldine alleged that her marriage to Jarrell was not irretrievably broken, and that his signature on the complaint for divorce "was made under duress and/or induced by fraud." The case was assigned to Judge Tommy Day Wilcox, and later to Judge Walker P. Johnson. During the course of the vigorously contested divorce proceedings, Jurldine had restrictions on her right to visit her husband.

According to Jurldine's Section 1983 complaint in the district court, at various points in the proceeding the state judges issued orders which were irregular and which evidenced their participation in a conspiracy to circumvent the normal judicial proceedings and grant the divorce. Among the alleged irregularities were that the state judges each moved the divorce proceeding ahead of other matters on the trial calendars; and that, although Jarrell had been declared incompetent at a prior stage of the proceeding, the court *sua sponte* declared Jarrell "competent" in the absence of any evidence that Jarrell's condition had changed. Jurldine alleges that the sole explanation for this *sua sponte* ruling was that, without this ruling, Jarrell could not have been permitted to prosecute the divorce action. Jurldine contends that these "irregular" rulings evidenced the judges' intent to "expedite" the divorce proceedings. Unquestionably, these judges' acts of which Jurldine complained were all committed within a judicial capacity and in connection with a divorce proceeding over which the judges had jurisdiction.

Jurldine also contended in her complaint that, while the divorce proceedings were pending, Eugene and Ruby Shelley and Paul and Sara Clark took actions to prevent Jurldine from visiting Jarrell. Jurldine argues that these actions evidenced the participation of these defendants in a conspiracy with the judges to prevent a reconciliation between Jarrell and Jurldine. Jurldine claims that this conspiracy resulted in the deprivation of her "liberty" interest in preserving her marriage.

Jurldine's complaint in the district court charged that there was further evidence of a widespread conspiracy to interfere with her marital relationship. Several months prior to Jarrell's filing for divorce, Jurldine reported to Detective Joe Wilder that her son had sold Jarrell's boat and had converted the proceeds to his own use. Before Magistrate George W. Harris, Jurldine signed an affidavit alleging that her son committed the crime of conversion. Magistrate Harris issued an arrest warrant for Jurldine's son, Jerry Goins. Jurldine subsequently had the warrant withdrawn, stating that she forgot she had sold the boat to her son.

On April 13, 1984, the same date on which Jurldine filed her answer to the divorce complaint, Magistrate Harris signed an affidavit before Magistrate John W. Smisson alleging that Jurldine had committed the offense of false swearing. Detective Wilder also signed an affidavit on that date before Magistrate Harris, alleging that Jurldine had committed the offense of falsely reporting a crime. Magistrates Harris and Smisson both issued warrants for Jurldine's arrest, and she was arrested a few days later. After a preliminary hearing before Magistrate Smisson, the case was bound over to the grand jury.

Jurldine contends that, through Jurldine's daughter-in-law, Magistrate Harris relayed information to Jurldine that she could avoid criminal prosecution if she did not contest the pending divorce proceedings. Jurldine contends that Magistrates Harris and Smisson and Detective Wilder were therefore involved in the conspiracy to interfere with Jurldine's marital relationship with Jarrell.

## II. PROCEEDINGS IN THE DISTRICT COURT

In November 1984, while the divorce proceedings were pending and three days before a scheduled hearing in the state court, Mr. Howard filed the present case on behalf of Jurldine in federal district court. Jurldine sought actual and punitive damages and asked the district court to enjoin the pending divorce proceedings.

Upon receipt of the complaint, the district court contacted plaintiff's attorney and orally requested that he submit a brief on the issue of the federal court's jurisdiction. In December 1984 Mr. Howard submitted such a brief, which stated that the state court proceeding itself was depriving plaintiff of her constitutional privacy, liberty, contract, and marital rights. The district court then sent a letter to Mr. Howard stating that counsel should (1) bring to the court's attention a case showing that the court had jurisdiction over the matters involved, and (2) serve the defendants with the complaint. The defendants were served in the first week of January 1985. The defendants filed motions to dismiss and for an award of attorneys' fees.

The district court then sent a letter to all counsel in the case, advising that the court intended to schedule a hearing on Judge Wilcox's motion to dismiss "as soon as a written response has been received from the plaintiff." The court apparently informed plaintiff that a written response was due on a certain date. In its letter to counsel, the court wrote, "Plaintiff should realize that no extensions of time will be granted for the filing of such a response." The court also wrote that, at the hearing, the court would hear arguments on whether the complaint was filed in "good faith" under Rule 11. The court enclosed a copy of Rule 11. A hearing was subsequently set for February 21, 1985. Prior to this hearing, plaintiff voluntarily dismissed Magistrate Smisson and Judge Walker Johnson from the action.

At the hearing of February 21, 1985, the court first inquired of Mr. Howard whether the court had any possible jurisdiction over the case under Section 1983. Mr. Howard argued that the complaint stated a claim for relief under Section 1983 insofar as the complaint alleged that the defendants, acting under color of state law, conspired to violate a liberty interest of Jurldine without due process of law. The focus of the hearing quickly shifted from the question of whether the allegations in the complaint stated a claim for relief, and towards the question of whether there was any factual

basis for those allegations. Near the end of the several-hour hearing, the court said: "Now, since the Court has entertained matters outside of the record, these motions to dismiss will be considered as motions for summary judgment. Either of you may supplement the record within one week, if you wish to do so." The court also asked Mr. Howard to submit under seal personal financial statements for himself and each of his law partners, and for his client. The court advised that these statements were for use in the event the court decided to impose sanctions under Rule 11.

All of the defendants submitted affidavits in which the defendants explained their actions and denied any participation in the alleged conspiracy. Judge Wilcox filed his affidavit on February 22, 1985. The other affidavits were filed with the court on February 26–28, 1985. On March 1, 1985, Mr. Howard filed an affidavit in which he stated that the factual allegations in the complaint were all supported by admissible evidence, and that the legal arguments were all supported by authority. On that same date, plaintiff filed an affidavit in response to the affidavit that had been submitted by Judge Wilcox. Despite the court's explicit request that he do so, Mr. Howard produced no evidence that Jurldine's daughter-in-law had relayed information from Magistrate Harris to Jurldine that criminal charges would be dropped if the divorce was not contested.

On March 29, 1985, the district court entered an order disposing of the case. See Donaldson v. Clark, 105 F.R.D. 526 (M.D.Georgia 1985). In its order, the court stated that "plaintiff's counsel was clearly advised by the court of its desire to pierce the pleadings and consider the matter on motion for summary judgment." Id. at 530–31. The court said, "Plaintiff has now received ample time in which to proffer a factual foundation which would arguably present material issues of fact precluding summary judgment. Plaintiff has failed to do so." Id. at 531. The court entered summary judgment in favor of all defendants on all claims.

The court also held that appellant's counsel utterly failed to demonstrate that, when he filed the complaint, he believed on the basis of reasonable inquiry that the complaint was well grounded in fact. Id. at 532. Consequently, the court determined that sanctions under Rule 11 were appropriate. The court ordered that Mr. Howard pay to the clerk of the court a "fine" in the amount of $500; and that he reimburse all defendants for all attorneys' fees and expenses reasonably incurred in the defense of this action. The court requested affidavits in order to determine the amount of fees and expenses. Before such a determination had been made, appellant filed a notice of appeal.

## III. FINALITY OF DISTRICT COURT'S JUDGMENT

█ The first question we must resolve is whether the district court's judgment in the instant case was a final, appealable judgment on the merits. This appeal was filed before the district court determined the amount of attorneys' fees and expenses to be awarded to defendants pursuant to Rule 11 sanctions against plaintiff's attorney. The only basis asserted for this Court's jurisdiction over this appeal is 28 U.S.C.A. § 1291, which provides that the courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts." If the district court's judgment was not a final decision within the meaning of this statute, then this Court does not have jurisdiction over this appeal.

In McQurter v. City of Atlanta, 724 F.2d 881 (11th Cir.1984), this Court set forth the test for determining whether a ruling on attorneys' fees is necessary for a judgment to be considered final:

When attorneys' fees are similar to costs ... or collateral to an action ..., a lack of determination as to the amount does not preclude the issuance of a final, appealable judgment on the merits. When, however, the attorneys' fees are an integral part of the merits of the case and the scope of relief, they cannot be characterized as costs or as collateral and their determination is a part of any final, appealable judgment.

*Id.* at 882, quoting *Holmes v. J. Ray McDermott & Co.,* 682 F.2d 1143, 1146 (5th Cir.1982). In *McQurter,* this Court held that attorneys' fees were a collateral issue when claimed under 42 U.S.C.A. § 1988. Despite the district court's failure to enter judgment on a motion for attorneys' fees in that case, the district court's order resolving the remaining issues in the case was held to be final and appealable.

In the subsequent case of *Bank South Leasing, Inc. v. Williams,* 769 F.2d 1497 (11th Cir.1985), the plaintiff alleged that the defendants breached a lease agreement that provided: "Lessee shall be liable for all costs, charges and expenses, including reasonable attorneys' fees and disbursements incurred by Lessor by reason of the occurrence of any Event of Default or the exercise of Lessor's remedies with respect thereto." *Id.* at 1500. The plaintiff cited this lease provision in its complaint and specifically sought attorneys' fees in its prayer for relief. Under those circumstances, this Court held that the issue of attorneys' fees was not a collateral issue but, rather, was an integral part of the merits of the case. Therefore, this Court held that the district court's judgment reserving decision on the appropriateness and amount of attorneys' fees was not a final, appealable judgment. *Id.*

The amount of sanctions to be awarded under Rule 11 can never be an integral part of the merits of the case and the scope of relief. We therefore hold that the determination of the amount of attorneys' fees to be awarded under Rule 11 is a collateral issue in the instant case. Consequently, despite the failure of the district court to determine the amount of attorneys' fees to be awarded under Rule 11, the judgment of the district court was final and appealable, and this Court has jurisdiction of this appeal under 28 U.S.C.A. § 1291.

## IV. FAILURE TO COMPLY WITH RULE 56 NOTICE REQUIREMENTS

Rule 56(c) of the Federal Rules of Civil Procedure requires that a motion for summary judgment shall be served "at least 10 days before the time fixed for the hearing. The adverse party prior to the day of the hearing may serve opposing affidavits." Fed.R.Civ.P. 56(c).

In the instant case, at the oral hearing on the motions to dismiss on February 21, 1985, the district judge informed the parties for the first time that the motions to dismiss would be treated as motions for summary judgment. At that time, the judge said that all the parties would have seven additional days to submit material in support of or in opposition to the converted summary judgment motions. The court did not set any other hearing or submission date for the converted summary judgment motions.

Although Rule 56 uses the term "hearing," it is now established that Rule 56 does not require that an oral hearing be held on a summary judgment motion. *Moore v. State of Florida,* 703 F.2d 516, 519 (11th Cir.1983). Rule 56 contemplates that a party moving for summary judgment will submit materials in support of the motion at the time the motion is made. The notice and hearing requirement of Rule 56(c) requires that, once a party moves for summary judgment or a motion to dismiss is converted into a motion for summary judgment, the adverse party be given at least 10 days' advance notice that the motion for summary judgment, and all materials in support of or in opposition to the motion, will be taken under advisement on a certain day. *See Griffith v. Wainwright,* 772 F.2d 822, 825 (11th Cir.1985). The purpose of this requirement is to insure that the non-moving party be afforded a reasonable opportunity to present, by way of affidavit or otherwise, anything necessary to rebut the submissions of the moving party. *See Davis v. Howard,* 561 F.2d 565, 571 (5th Cir.1977).

In the instant case, the district court erred by instructing the parties at the February 21, 1985, hearing that "they" would have only seven days to submit materials pertaining to the summary judgment motion. It is true that the court did not actually rule on the converted motions for summary judgment until more than a

month after the defendants filed their submissions, and that the court even accepted submissions beyond the deadline the court had set; but that does not cure the district court's error. Mr. Howard could not have known that his submissions would be accepted beyond the seven-day deadline; in fact, the court had earlier informed Mr. Howard that it would strictly enforce time deadlines. Most of the defendants' submissions were not filed until February 26–28, 1985. Mr. Howard was in effect instructed that he had to respond to these submissions by February 28, 1985. Consequently, Mr. Howard had far less than 10 days—indeed, virtually no opportunity within the time limitations imposed by the district court—to prepare and submit materials in opposition to the submissions made by the defendants, who were the moving parties. The district court's order granting summary judgment in favor of the defendants must therefore be reversed.

## V. SANCTIONS UNDER RULE 11

■■■■ Rule 11 of the Federal Rules of Civil Procedure provides, in part:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

As amended in 1983, Rule 11 of the Federal Rules of Civil Procedure now incorporates an objective good faith standard. *Eavenson, Auchmuty & Greenwald v. Holtzman,* 775 F.2d 535, 540 (3rd Cir.1985). The party or attorney signing the pleading must believe, based upon reasonable inquiry, that the pleading is well grounded both in fact and in law, and that it is not being used for an improper purpose. Generally, a decision of the trial court on whether to impose sanctions against attor-

neys under Rule 11 is subject to review for abuse of discretion. *Id.*

### A. Timing of Sanctions.

■■■■ In the present case the trial court imposed sanctions against Mr. Howard when he failed to demonstrate that, to the best of his knowledge, information, and belief formed after reasonable inquiry, the complaint that he signed was well grounded in fact. We have already held that the district court's order granting summary judgment in favor of the defendants must be reversed. This holding compels us also to reverse the district court's imposition of sanctions against Mr. Howard under Rule 11. A district court's decision of whether to impose Rule 11 sanctions based on the complaint should wait until the end of the litigation. *See* Fed.R.Civ.P. 11 advisory committee note. Since we have held that the district court failed to give Mr. Howard an adequate opportunity to submit materials in opposition to defendants' converted summary judgment motions, the district court should wait until Mr. Howard has had such an opportunity before deciding whether to impose Rule 11 sanctions.

On remand, the district court may decide to dismiss the complaint with prejudice under Rule 12(b) with respect to one or more of the defendants. If a court dismisses a claim with prejudice under Rule 12(b), such dismissal does not preclude the court from requesting submissions under Rule 11 on the issue of whether the attorney signing the complaint believed, after reasonable inquiry, that the complaint was well grounded in fact. As in the case of summary judgment motions, the party or attorney defending the Rule 11 motion must be given a reasonable opportunity to respond to any submissions by the moving party.

### B. Propriety of Assessing Fine.

The district court wrote, "Because of the seriousness of the unsupported allegations of judicial impropriety, as well as the injury to the administration of justice and federal-state judicial comity that such allegations have caused, this court finds that sanctions under Rule 11 are necessary both to punish

such conduct and to deter such abuse from being repeated in the future." *Donaldson, supra,* at 532. Consequently, the court ordered Mr. Howard to pay to the Clerk of the District Court a fine in the amount of $500.

The district court in the instant case apparently concluded that Rule 11 gave the court the power to impose a fine against the attorney for filing and attempting to prosecute the complaint. In authorizing the award of "an appropriate sanction" against an attorney, which sanction may include the expenses incurred by the other party, Rule 11 does not expressly authorize the imposition of a fine payable to the court. On the other hand, Rule 11 does not expressly forbid the imposition of such a fine. The advisory committee note sheds some light on the propriety of such a fine, stating that "courts have claimed the power to impose sanctions on an attorney personally, either by imposing costs or employing the contempt technique." Fed.R.Civ.P. 11 advisory committee note.

█ Because of the penal and deterrent purposes of Rule 11, we hold that there may be circumstances under which it is appropriate for a court to impose a fine for the purpose of punishing an attorney for violating the provisions of that rule. However, since the purpose of such a fine would be to punish the attorney for past conduct, the fine would be in essence a sanction in the nature of criminal contempt. *See In Re Dinnan,* 625 F.2d 1146, 1149 (5th Cir. Unit B 1980). Accordingly, in such cases—where the attorney is "fined" as punishment—the court imposing the fine must follow the procedures as required in criminal contempt proceedings.

Where a criminal contempt proceeding is not a summary contempt proceeding under Fed.R.Crim.P. 42(a) to punish conduct committed in the actual presence of the court, the court must abide by the due process requirements set forth in Rule 42(b) of the Federal Rules of Criminal Procedure. Rule 42(b) provides, in part:

A criminal contempt ... shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the Court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides.

█ The district court in the instant case failed to afford Mr. Howard the procedural safeguards applicable to criminal contempt proceedings. The court did not inform Mr. Howard in advance of the specific reasons for which he might be fined. Also, the court did not give Mr. Howard a reasonable opportunity to prepare a defense against specific charges, or a hearing at which to present such a defense. *Compare Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193 (11th Cir.1985) (prior to assessing fine against a party, the court gave the party notice of specific conduct subject to sanction and, two weeks later, held a three-day evidentiary hearing on the matter). The district court thus acted improperly in assessing the $500 fine against Mr. Howard.

## VI. CONCLUSION

Finally, we note that this Court has had to subject the complaint in the present case to searching examination in order to discern the grounds upon which the plaintiff bases her claim for relief. Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint set forth a short and plain statement of the claim showing that the pleader is entitled to relief. The district could have, and perhaps should have, dismissed the complaint for its total failure to abide by this requirement of Rule 8(a).

The decision of the district court granting summary judgment in favor of the defendants and imposing Rule 11 sanctions against the plaintiff's attorney is REVERSED. The present case is REMAND-

ED for further proceedings not inconsistent with this opinion.