[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11554
Non-Argument Calendar

_____

D.C. Docket No. 0:06-cv-60146-EGT

CHRISTOPHER JAMES PEER,

Plaintiff-Counter Defendant-Appellee,

ESQ. BARRY G. RODERMAN,
ESQ. SCOTT MARSHALL GREENBAUM,

Interested Parties-Appellees,

ESQ. RICHARD L. ROSENBAUM,

Consolidated Plaintiff-Appellee,

versus

DANIEL WARFIELD LEWIS,

Defendant-Counter Claimant-Appellant,

JAMES B. CHAPLIN, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 9, 2014)

Before CARNES, Chief Judge, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Daniel Warfield Lewis, proceeding pro se, appeals the order imposing sanctions against three lawyers who represented Christopher Peer in an underlying action brought against Lewis under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681. He challenges the amount of the sanctions, which he believes is too low, and the "Rule 11-type" framework the district court[1] used to impose sanctions under its inherent power. Asserting that the district court is biased, Lewis requests that this Court determine the amount of sanctions to be imposed.

I.

The dispute in this case stems from a municipal election that occurred nearly a decade ago. Peer and Lewis both ran for Mayor of Fort Lauderdale, Florida in 2006. On January 17 of that year, Lewis sought to have Peer disqualified from the race by filing an emergency complaint in state court alleging that Peer was not in compliance with the election's residency requirements. Lewis maintained that Peer's principal residence was not in Ft. Lauderdale but in Wilmington, North Carolina. Paragraph 19 of Lewis' complaint stated that the information about

---

[1] The parties agreed to have a magistrate judge exercise jurisdiction over this case under 28 U.S.C. § 636(c), so in this opinion the term "district court" refers to Magistrate Judge Edwin Torres.

2

Peer's residence came from a TransUnion credit report.[2] At the time the action was filed, Lewis' lawyer was Robert Malove, and Peer was represented by Richard Rosenbaum.

After a February 1, 2006 hearing in which the state court dismissed the complaint because there had not been effective service of process, Lewis' counsel, Malove, told Peer and Peer's counsel, Rosenbaum, that Paragraph 19 of Lewis' complaint was inaccurate. Malove admitted that he had obtained that address from a Westlaw People Finder report, not from a credit report as they had alleged in the complaint.[3] Malove therefore deleted Paragraph 19's reference to a credit report and served the amended complaint on Peer. The very next day, Peer got a copy of his credit report which showed that Lewis had never accessed it. He faxed a copy of the report to his lawyer, Rosenbaum.

Although Peer and Rosenbaum had a copy of the credit report which showed that Lewis had never accessed Peer's credit information, Rosenbaum filed on Peer's behalf a lawsuit in federal court alleging that Lewis had violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. In the complaint, Peer alleged that Lewis had violated the FCRA by getting a copy of his credit report and

---

[2] Paragraph 19 of the complaint asserted that "an October 15, 2005 credit report by TransUnion . . . reported that Defendant's [Peer's] current address is '18 Charter Drive, Wilmington, North Carolina 28403.'"

[3] The Westlaw People Finder report itself listed TransUnion as the source for the North Carolina address.

3

publishing information from it.  Peer filed the lawsuit less than two weeks before the mayoral election.

In late February 2006, after the election which neither Lewis nor Peer won, Lewis filed a pro se counterclaim against Peer for abuse of process and for filing a lawsuit for improper purposes in violation of 15 U.S.C. § 1681n(c).  Very little discovery or other activity occurred between February and June 2006.  On June 13, 2006, Lewis retained counsel.  And on June 19, 2006, Rosenbaum sought to withdraw from his representation of Peer, citing a breakdown in the attorney-client relationship; the motion was granted on June 21, 2006.  Peer retained Barry Roderman and Scott Greenbaum as substitute counsel in mid-July 2006.  Lewis deposed Peer on July 25, 2006.  Immediately before the deposition, Peer's counsel, Roderman, gave Lewis' counsel a copy of Peer's February 2006 credit report, which showed that Lewis had never accessed it.  Thus, Roderman and his co-counsel Greenbaum were aware that Peer's FCRA claim was frivolous at least by July 2006.  Lewis moved for summary judgment on the FCRA claim in August 2006.

That motion was still pending when, on October 10, 2006, Lewis filed a motion for sanctions against Roderman and Greenbaum under Federal Rule of Civil Procedure 11.  The very next day, Roderman sought leave to withdraw as counsel.  His motion to withdraw was granted on October 31, 2006, which left

Greenbaum as Peer's only counsel of record.  Greenbaum did not fare well in that role.  On June 26, 2007, the district court struck Peer's complaint and answer to Lewis' counterclaim "as a sanction for [Peer's] willful, repeated, and un-ending violations of [the district court's] discovery orders and discovery rules."  In the same order, the court set a status conference to determine "whether [Greenbaum] should be disqualified from any further role in this case."  Greenbaum did not show up to that status conference, and on July 20, 2007, the district court disqualified him.  He has since been disbarred from the practice of law by the Florida Bar.  Lewis also moved for sanctions against Rosenbaum, Peer's original counsel, in July 2007.

In the meantime, Lewis' counterclaim for abuse of process proceeded to trial on the issue of damages only.  The jury awarded Lewis nearly $800,000 in compensatory and punitive damages, but the district court reduced the award to $12,500 in compensatory damages and $112,500 in punitive damages.  The court later entered judgment on Lewis' second counterclaim (a statutory cause of action for filing a lawsuit for improper purposes), and awarded him $174,996.52 in attorney's fees and costs in that judgment.

However, the district court denied Lewis' motions for sanctions against Rosenbaum, Roderman, and Greenbaum.  The court concluded that Rosenbaum's conduct did not warrant sanctions under Rule 11, 28 U.S.C. § 1927, or the court's

5

inherent power because the court could not find, based on the record, that Rosenbaum had knowingly acted in bad faith.  It failed to address the merits of the sanctions motion against Roderman and Greenbaum.  Lewis appealed the order, and this Court affirmed in part, reversed in part, and remanded.  See Peer v. Lewis, 606 F.3d 1306 (11th Cir. 2010).

We affirmed the judgment of the district court with respect to Rosenbaum's conduct under Rule 11 and § 1927 because (1) Lewis' motion for Rule 11 sanctions against Rosenbaum was untimely and (2) Rosenbaum had not run afoul of § 1927, which prohibits attorneys from engaging in dilatory tactics.  Id. at 1312–14.  But we reversed the district court's refusal to sanction Rosenbaum under its inherent power, concluding that the court had clearly erred in holding that there was insufficient evidence to show that Rosenbaum had acted in bad faith.  Id. at 1316.  To the contrary, the evidence overwhelmingly showed that Rosenbaum acted in bad faith by knowingly pursuing a frivolous claim.  Id.  Nonetheless, recognizing that district courts have broad discretion about whether to impose sanctions, and, if so, in what amount, we remanded the case to the district court for it to make the sanctions determination in light of our conclusions on appeal.  Id.  We also instructed the district court to consider in the first instance whether Roderman and Greenbaum should have been sanctioned under Rule 11.  Id. at 1313.

On remand, the district court held an evidentiary hearing and later issued an order in which it made the following rulings:  As to Rosenbaum, the court imposed a monetary penalty of $1,000 for the fees and costs that Lewis had incurred before June 22, 2006 (the date on which Rosenbaum withdrew).  The court explained that, although it could not impose Rule 11 sanctions due to the untimeliness of Lewis' motion, it could impose "Rule 11-type sanctions through the Court's inherent power."  It settled on the sum of $1,000 because Rosenbaum, while blameworthy, had actually done very little work on the case.  As for Roderman and Greenbaum, the district court imposed sanctions under Rule 11 for $500 and $5,000, respectively.  Roderman received a lower monetary penalty because his filings "were on balance minor and inconsequential."  Greenbaum received a higher penalty because he remained in the case as Peer's counsel of record for longer and engaged in more sanctionable conduct.  The district court closed its order by articulating a hope that this long and unnecessary case would finally be put to rest.

That hope proved illusory.  Lewis, acting pro se, timely filed this appeal of the district court's sanctions order.  He contends that the district court abused its discretion in applying "Rule 11-type sanctions" against Rosenbaum and that the monetary amounts it imposed were inadequate.  He also contends that the district court is biased against him and that this Court should take matters into its own hands to determine appropriate sanctions.  None of the sanctioned attorneys cross-

7

appealed.  In fact, Roderman was the only sanctioned attorney who even filed a response brief, but his brief was stricken by this Court for failing to conform to rules.  Rosenbaum filed a motion requesting to be heard at oral argument, but did not provide an explanation as to why he failed to timely file a response brief.

## II.

We review a district court's award of sanctions under Rule 11, § 1927, or its inherent power only for an abuse of discretion.  Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1237 (11th Cir. 2007).  We also "review for abuse of discretion the district court's imposition of sanctions in a certain amount."  Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1336 (11th Cir. 2002).  A district court abuses its discretion if it makes a "clear error of judgment" or applies "the wrong legal standard."  Amlong, 500 F.3d at 1238.

## A.

We first address the type and amount of sanctions the district court imposed against Rosenbaum.  Lewis contends that the district court abused its discretion by using its inherent power to impose a "Rule-11 type" sanction against Rosenbaum.  He argues that the district court should have imposed a greater sanction against Rosenbaum under its inherent power, instead of using the "more limited" Rule 11 framework.  This argument is groundless.

Federal courts possess potent inherent powers that they may use to "fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44–45, 111 S.Ct. 2123, 2132–33 (1991). And the "inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct," id. at 49, 111 S.Ct. at 2135, "for these rules are not substitutes for the inherent power," In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995). Whereas rule-based sanctions can reach only "certain individuals or conduct, the inherent power extends to a full range of litigation abuses" and serves to fill the gaps left by rule-based sanctions. Chambers, 501 U.S. at 46, 111 S.Ct. at 2134. In this case, the district court used its inherent powers to fill a gap left by Rule 11's timeliness requirement. In Lewis' first appeal, we affirmed the district court's denial of his Rule 11 motion against Rosenbaum on the ground that it was untimely. Peer, 606 F.3d at 1313. We also held, however, that there was "overwhelming evidence that Rosenbaum knowingly pursued a frivolous claim, and thus acted in bad faith." Id. at 1316. Faced with Rosenbaum's bad faith, the district court was justified in using its inherent power to sanction him. After all, the "key to unlocking a court's inherent power is a finding of bad faith." Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998).

Nor was it an abuse of discretion for the district court to impose "Rule 11-type sanctions." Rule 11 subjects to sanctions any lawyer who files a pleading,

9

motion, or other paper that is frivolous or lacks evidentiary support. See Fed. R. Civ. P. 11(b)(2)–(3). Because we concluded in Peer that the complaint Rosenbaum filed was "objectively frivolous at the time of filing," and that he knew it was frivolous when he filed it, 606 F.3d at 1312, Rule 11 sanctions were substantively appropriate, although untimely. There is no case in this Circuit barring a district court from using a "Rule 11-type analysis" when imposing sanctions under its inherent power in these circumstances. Moreover, the district court explicitly stated that in doing so it was following our suggestion in Peer that Rule 11 sanctions would have been appropriate if timely sought.

Having decided that the district court's imposition of sanctions against Rosenbaum was proper, we turn now to the amount of the monetary penalty the court imposed. The district court ordered Rosenbaum to pay only $1,000. Lewis argues that the district court abused its discretion by cutting off Rosenbaum's liability as of June 22, 2006, which was the date he withdrew as Peer's counsel, and because the amount of the sanction is inadequate to compensate Lewis or deter similar conduct in the future. We disagree on both points.

Rule 11 provides for a range of penalties, including payment by the offending attorney of "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). As the language of the Rule suggests, it "permit[s] an award only of those expenses

directly <u>caused</u> by the [sanctionable] filing." <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 406, 110 S.Ct. 2447, 2461 (1990) (emphasis added).  In reviewing a district court's imposition of sanctions under its inherent power, we have held that a district court is well within its discretion to "fashion[] a sanction which is a direct response to the harm that the bad faith conduct of the attorney causes." <u>Barnes</u>, 158 F.3d at 1215 (upholding award to defendant of the cost of his expert witness fees because the plaintiffs' claims required defendant to hire an expert).  Thus, whether we analyze the sanctions from a Rule 11 or an inherent power standpoint, the district court did not abuse its discretion in cutting off Rosenbaum's liability as of the date of his withdrawal from the case.

The entirety of Rosenbaum's involvement amounted to thirteen pages of filings, which prompted a mere thirteen pages of responsive filings from Lewis. As a result, the direct effect on Lewis of Rosenbaum's frivolous filings was relatively minor.  It is also worth noting that Lewis initially chose to proceed <u>pro</u> <u>se</u> — he prepared his initial pleading, which contained his answer, affirmative defenses, and counterclaims, on his own.  It was not until June 13, 2006 that Lewis retained counsel, and Rosenbaum withdrew from his representation of Peer just eight days after that.  Lewis' attorney made only one filing while Rosenbaum was counsel of record for Peer, and that was just a short response in opposition to Rosenbaum's motion to withdraw.  In light of those facts, the district court did not

abuse its discretion in cutting off Rosenbaum's liability as of the date that he withdrew. In doing so, the district court fashioned a sanction "which [was] a direct response to the harm that the bad faith conduct of the attorney cause[d]." Barnes, 158 F.3d at 1215.

Nor did the district court abuse its discretion by setting the amount of the sanction at only $1,000. Technically, courts determine the amount of attorney's fees to be charged by calculating the "lodestar," which is the number of hours reasonably spent working on the case multiplied by a reasonable hourly rate. See Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000). In this case, however, calculating the lodestar would have been difficult in light of the fact that Lewis was acting as a pro se litigant for the majority of Rosenbaum's involvement and his attorney made only one filing while Rosenbaum was Peer's counsel of record. Circuit precedent indicates that a pro se litigant cannot recover attorney's fees under Rule 11. See Massengale v. Ray, 267 F.3d 1298, 1302–03 (11th Cir. 2001). So the district court arrived at an amount of $1,000 by generally employing its expertise on cost- and fee-related matters and by taking into account the fact that Lewis must have incurred some cost in responding to the complaint and filing his counterclaim.[4] The district court also considered the need to deter Rosenbaum

---

[4] The court specifically noted that, if it had calculated the amount of the sanction more precisely, tying it directly to Lewis' costs and fees, then it would have been a lower dollar amount.

and other attorneys from engaging in similarly frivolous behavior in the future.

See Baker v. Alderman, 158 F.3d 516, 528 (11th Cir. 1998) (noting that

"deterrence remains the touchstone of . . . Rule 11").  In doing so, the district court

did not abuse its discretion.

Lewis complains that the amount of the sanction was inadequate because it

did not cover any of his compensatory damages.  Apparently, Lewis would like for

us to force Rosenbaum to pay the nearly $300,000 in damages he won on the

underlying counterclaims against Peer.[5]  Lewis is wrong.  He has conflated the

award he is entitled to under those judgments with the punitive sanctions the court

appropriately imposed against Peer's attorneys.  The $125,000 judgment on Lewis'

abuse of process counterclaim and the nearly $175,000 in fees and costs awarded

on his second counterclaim are payable by Peer, not Peer's attorneys.  A court

employs its inherent power to sanction an attorney to punish and deter untoward

conduct, not to compensate a litigant for his underlying injury.  See Martin, 307

F.3d at 1337 (explaining that a sanction imposed under a court's inherent power

should punish and deter).  Accordingly, it would not be appropriate to transform

the judgment payable by Peer on the merits of Lewis' counterclaim into a sanction

against Peer's attorney.  See Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir.

---

[5] Lewis makes the same argument with respect to the amount of sanctions imposed against Greenbaum and Roderman.  Because the issue is the same regardless of the identity of the lawyer, this analysis applies to Lewis' arguments about Greenbaum and Roderman as well.

1986) ("The amount of sanctions to be awarded under Rule 11 can never be an integral part of the merits of the case and scope of relief."), vacated on other grounds by Donaldson v. Clark, 819 F.2d 1551, 1554 (11th Cir. 1987) (en banc).

B.

We next address the district court's imposition of sanctions against Roderman and Greenbaum, Peer's later-appearing attorneys. As we have discussed, Greenbaum was the last lawyer standing on Peer's side of the conflict. Roderman withdrew from the litigation on October 31, 2006 (after Lewis filed his Rule 11 motion against Roderman and Greenbaum), but Greenbaum remained Peer's counsel of record until he was disqualified by the court on July 20, 2007. The district court imposed Rule 11 sanctions against both of them — $5,000 against Greenbaum and $500 against Roderman. We will review Lewis' challenges to the sanctions awards against each of them separately, although most of the analysis is applicable to both.

Lewis contends that $5,000 is not enough to deter Greenbaum or others from engaging in similar bad-faith conduct in the future. Inconsistently, he also notes that the district court "could not expect Greenbaum to pay any sanctions" because Greenbaum has been disbarred, his whereabouts are unknown, and he failed to pay the $4,923.25 in other sanctions that the court awarded Lewis for Greenbaum's improper termination of a deposition. In reality, none of those reasons counsels in

14

favor of increasing Greenbaum's sanctions.  Lewis is correct that the central purpose of Rule 11 is deterrence.  See Cooter & Gell, 496 U.S. at 393, 110 S.Ct. at 2454.  But Greenbaum himself need not be deterred from advocating frivolous claims because the Florida Bar has already prevented him from practicing law at all.  Nor does the fact that Greenbaum cannot be located and has not paid the sanction imposed in connection with the deposition support Lewis' argument for increasing the amount Greenbaum should pay in Rule 11 sanctions for pursuing a frivolous claim.

We also do not believe that the district court abused its discretion in setting the sanction against Greenbaum at $5,000.  We have upheld a district court's imposition, pursuant to its inherent power, of fines in the amount of $500 against attorneys who engaged in willful misconduct, observing that the fines "justly punished the . . . attorneys and, hopefully, will deter other litigants from engaging in similar activity."  Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1546 (11th Cir. 1993).  And the Supreme Court has held that a "district court is better situated than a court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11."  Cooter & Gell, 496 U.S. at 402, 110 S.Ct. at 2459.

Finally, Lewis has failed to convince us that the district court's setting the sanction against Roderman at $500 was an abuse of discretion.  As the district

15

court explained, Roderman received a lesser sanction because he withdrew from the case nearly nine months before Greenbaum was disqualified and did not contribute much in the way of filings. The district court did not fully explain how it calculated the sanction amount, but it is not necessary for this amount to reflect Lewis' attorney's fees, as Lewis' argument seems to assume. See Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1295 (11th Cir. 2002) ("Although the sanctions most commonly imposed are costs and attorney's fees, the selection of the type of sanction to be imposed lies with the district court's sound exercise of discretion."). The district court did not abuse its discretion in imposing a sanction of $500 against Roderman.

C.

Lewis' final argument is that the magistrate judge was biased against him and that this Court should therefore determine what sanctions are appropriate. We disagree.

As we have discussed, we generally leave sanctions determinations to the district courts. See Collins v. Walden, 834 F.2d 961, 966 (11th Cir. 1987) ("It is the District Court Judge who sits at this bottleneck and who most accurately perceives the harms which rightful litigants suffer because of Rule 11 violations. No one is better situated to perceive the measure of the sanction necessary to achieve the goals which the rule contemplates."). Bias sufficient to disqualify a

judge must stem from extrajudicial sources, except when a judge's remarks in the judicial context demonstrate a pervasive bias or prejudice.  In re Walker, 532 F.3d 1304, 1310–11 (11th Cir. 2008).  Adverse rulings are properly the subject of appeal, and do not provide a party with a basis for holding that the court's impartiality is in doubt.  See Byrne v. Nezhat, 261 F.3d 1075, 1103 (11th Cir. 2001), abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 128 S.Ct. 2131 (2008).

There is no indication in this case that the judge was in any way biased against Lewis.  The judge's recognition that Rosenbaum was a well-respected criminal defense attorney does not demonstrate a bias.  Nor do any of the judge's offhand comments about political litigation or the motives of political litigants reveal the sort of bias that would affect his ability to adjudicate the case.  Lewis's arguments to the contrary are baseless.

**AFFIRMED**.[6]

---

[6] Rosenbaum's motion requesting oral argument is denied.