**Jurldine A. DONALDSON,**
**Plaintiff-Appellant,**

v.

**Paul V. CLARK, et al.,**
**Defendants-Appellees.**

No. 85–8270.

United States Court of Appeals,
Eleventh Circuit.

June 24, 1987.

James W. Howard and R. David Ware, Atlanta, Ga., for plaintiff-appellant.

Charles R. Adams III, Ft. Valley, Ga., for Clark.

Alvin McDougald, Ft. Valley, Ga., for Harris.

Kathryn Allen, Asst. Atty. Gen., Atlanta, Ga., for Wilcox.

Gregory Homer, Ft. Valley, Ga., for Wilder.

Katherine M. Kalish, Macon, Ga., for Shelley.

Before RONEY, Chief Judge, GODBOLD, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HATCHETT, ANDERSON, CLARK, and EDMONDSON, Circuit Judges.

GODBOLD, Circuit Judge:

## I. BACKGROUND

The court took this case *en banc* to consider procedures and standards for the imposition of sanctions under Rule 11, Fed.R. Civ.P., as amended in 1983.[1]

---

1. Rule 11, Signing of Pleadings, Motions, and Other Papers; Sanctions, provides as amended:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averment of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to

This case arose as a consequence of a suit in Georgia state court in which Jarrell Donaldson sought a divorce from his wife Jurldine Donaldson. While the divorce case was pending, Jurldine Donaldson filed suit under 42 U.S.C. § 1983 in the U.S. District Court, M.D. Georgia, alleging that various persons conspired under color of state law to unlawfully expedite the divorce proceedings, terminate her marriage, and prevent her from visiting and perhaps reconciling with her husband, thereby depriving her of rights under the Fourth and Fourteenth Amendments without due process of law. The complaint sought various forms of relief including actual and compensatory damages, punitive damages, injunctive relief against the pending divorce action and against further harassment by defendants, and costs and attorneys' fees. Defendants filed motions to dismiss and for an award of attorneys' fees.

On February 21, 1985 a hearing was held on the motions to dismiss. The focus of the hearing shifted away from the question of whether the allegations in the complaint stated a claim for relief and toward the question of whether there was any factual basis for those allegations. Near the end of the hearing the court said:

> Now, since the Court has entertained matters outside the record, these motions to dismiss will be considered as motions for summary judgment. Either of you may supplement the record within one week, if you wish to do so.

The court asked counsel for Jurldine to submit personal financial statements for himself, his law partners and his client and advised that these statements were for use in the event the court decided to impose sanctions under Rule 11.

All defendants submitted affidavits, one on February 22 and the others on February 26–28, denying participation in the conspir-

acy. On March 1 plaintiff submitted an affidavit in response to defendant Judge Wilcox's affidavit and plaintiff's counsel submitted an affidavit in support of plaintiff's response to motions for attorneys' fees and in response to all Rule 11 issues. The affidavit of plaintiff's counsel stated that the factual allegations in the complaint were supported by admissible evidence and that the legal arguments were supported by authority.

On March 29 the district court granted summary judgment on behalf of defendants and held that despite ample opportunity to demonstrate that the complaint was well grounded in fact, plaintiff's counsel had failed to proffer such support. The court found that sanctions were warranted under Rule 11 and ordered counsel to pay to the clerk a fine of $500 and to reimburse the defendants for all attorneys' fees and expenses reasonably incurred in defending the action, these amounts to be determined by the court on submission of affidavits by defense counsel. *Donaldson v. Clark*, 105 F.R.D. 526 (M.D.Ga.1985).

On appeal a panel of this court reversed the summary judgment and the Rule 11 sanctions. *Donaldson v. Clark*, 786 F.2d 1570 (11th Cir.1986).[2] The court voted the case *en banc*, thereby vacating the panel opinion.

## II. FINALITY OF JUDGMENT AND FAILURE TO COMPLY WITH RULE 56 NOTICE REQUIREMENTS

We adopt the rendition of the facts and the procedural history set out in the panel opinion at 786 F.2d 1571–74.

■ We agree with the panel that the district court's decision was appealable as a final judgment on the merits and adopt its holding on that issue. *Id.* at 1574–75.

---

the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading,

motion, or other paper, including a reasonable attorney's fee.

**2.** Contrary to plaintiff's contention, this case is not moot. Because Jurldine has been divorced from her husband her request for injunctive relief is now moot, but the remainder of her claims are not moot.

■ We also adopt that part of the panel opinion holding that the district court erred in granting defendants' motions for summary judgment, converted from motions to dismiss, without giving the non-moving party ten days notice that the motions were to be so converted. *Id.* at 1575–76. In addition to the authority cited by the panel on this issue we also note that:

It is clearly the law in this circuit that whenever a district judge converts a 12(b)(6) motion to dismiss into one for summary judgment by considering matters outside the pleadings the judge *must* give all parties ten-days notice that he is so converting the motion. *Herron v. Beck,* 693 F.2d 125, 126 (11th Cir.1982); *Underwood v. Hunter,* 604 F.2d 367, 369 (5th Cir.1979).

*Property Management & Investments, Inc. v. Lewis,* 752 F.2d 599, 605 (11th Cir. 1985). Failure to give such notice "will result in reversal and a remand." *Id.* at 606. Although Rule 56 does not require that an oral hearing be held on a summary judgment motion, the non-moving party should be informed of the date as of which the court will consider the motion. *See Moore v. State of Florida,* 703 F.2d 516, 519 (11th Cir.1983). The purpose of the ten-day requirement is to notify the parties that the court may dispose of the case by summary judgment so that "the non-moving party will have an opportunity to marshal its resources and ... rebut[ ] the motion for summary judgment with every factual and legal argument available." *Id.*[3]

We therefore reverse the district court's order granting summary judgment in favor of defendants and remand the case for further proceedings.

## III. SANCTIONS UNDER RULE 11

■ Our holding that the summary judgment in favor of defendants must be reversed compels us also to reverse the imposition of sanctions against plaintiff's counsel under Rule 11. Although the timing of sanctions rests in the discretion of the trial judge, "it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter." Advisory Committee Note to Rule 11, as amended in 1983 (hereafter "Advisory Committee Note"). Because we have held that the district court failed to give plaintiff's counsel the full ten-day period to submit material in opposition to the converted summary judgment motions, the district court should wait until counsel has had such an opportunity before deciding whether to impose Rule 11 sanctions. If the court does consider imposing sanctions under Rule 11, the following standards and procedures should guide it in deciding whether sanctions are appropriate and what they should be.

Rule 11 was amended in 1983 to provide (underlinings indicate additions and brackets deletions in the 1983 amendments):

The signature of an attorney *or party* constitutes a certificate by him that he has read the pleading, *motion, or other paper;* that to the best of his knowledge, information, and belief [there is good ground to support it; and that it is not interposed for delay] *formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.*

Fed.R.Civ.P. 11. This language "stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule."

---

**3.** The district court's failure to allow the parties ten days to supplement the record on the converted 12(b)(6) motions was not harmless error. In *Property Management,* 752 F.2d at 605–07 and *Denis v. Liberty Mutual Insurance Company,* 791 F.2d 846, 850 (11th Cir.1986), because of the unique circumstances presented, we recognized an extremely limited exception to the longstanding rule in this circuit that a failure to comply with the ten-day notice requirement necessitates reversal and remand. This case does not present such unique circumstances of harmless error.

Advisory Committee Note. Rule 11 as amended is intended to "reduce frivolous claims, defenses or motions" and to deter "costly meritless maneuvers," thus avoiding unnecessary delay and expense in litigation. Report of the Judicial Conference Committee on Rules of Practice and Procedure, app. C (Mar. 9, 1982) (letter from Judge Walter Mansfield, Chairman, Advisory Committee on Civil Rules), reprinted in 97 F.R.D. 190, 192 (1983); *see also* Advisory Committee Note. Rule 11 sanctions are designed to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *Pin v. Texaco, Inc.*, 793 F.2d 1448, 1455 (5th Cir.) (quoting Advisory Committee Note), *reh'g denied*, 797 F.2d 977 (1986) (en banc).

▮▮▮ Rule 11 as amended incorporates an objective standard. *See Hashemi v. Campaigner Publications, Inc.*, 784 F.2d 1581, 1583 (11th Cir.1986); *Pin*, 793 F.2d at 1455; *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 540 (3rd Cir. 1985). The standard for testing conduct under amended Rule 11 is "reasonableness under the circumstances," a standard "more stringent than the original good-faith formula." Advisory Committee Note.[4] The Advisory Committee Note reminds courts to "avoid using the wisdom of hindsight" and to "test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Id.* What constitutes a reasonable inquiry

> may depend on such factors as how much time for investigation was available to the signer [and] whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether

he depended on forwarding counsel or another member of the bar.

*Id.* With respect to the scope of appellate review, we find that the following approach is the correct one: Whether (1) factual or (2) dilatory or bad faith reasons exist to impose Rule 11 sanctions is for the district court to decide subject to review for abuse of discretion;[5] on the other hand, a decision whether a pleading or motion is legally sufficient involves a question of law subject to *de novo* review by this court. *See Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174–75 (D.C.Cir.1985).

Whether sanctions are viewed as a form of cost-shifting, compensating opposing parties injured by the vexatious or frivolous litigation forbidden by Rule 11, or as a form of punishment imposed on those who violate the rule, the imposition of sanctions pursuant to Rule 11 is meant to deter attorneys from violating the rule. *See* Advisory Committee Note. "The word 'sanctions' in the caption, for example, stresses a deterrent orientation in dealing with improper pleadings, motions, or other papers." *Id.*

### A. *The permissibility of imposing financial penalties under Rule 11*

▮▮▮ Rule 11 itself gives courts the discretion to fashion sanctions to fit specific cases:

> If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, *an appropriate sanction*, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

---

4. A finding of subjective bad faith was a predicate to the imposition of sanctions under the pre-amendment rule. *See Hashemi*, 784 F.2d at 1583; *Eavenson*, 775 F.2d at 540; *Davis v. Veslan Enterprises*, 765 F.2d 494, 497 n. 4 (5th Cir.1985); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985).

5. In *Hashemi*, 784 F.2d at 1584, we applied the clearly erroneous standard when reviewing the district court's determination under the pre-amendment version of Rule 11 that the plaintiffs had not acted in bad faith. The present case is the first to come before us under the amended rule.

Fed.R.Civ.P. 11 (emphasis added). Therefore, while Rule 11 neither expressly permits nor expressly forbids the imposition of a financial penalty, it does explicitly give courts the authority to impose an "appropriate sanction." [6] The discretion vested in the court is reinforced by the Advisory Committee Note which states that "[t]he court ... retains the necessary flexibility to deal appropriately with violations of the rule. It has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted." Although the sanctions most commonly imposed are costs and attorneys' fees, the selection of the type of sanction to be imposed lies within the district court's sound exercise of discretion. *See Westmoreland*, 770 F.2d at 1178–79; *Davis*, 765 F.2d at 500–01.[7]

The imposition of a monetary sanction is a particularly reasonable use of a court's discretion under Rule 11. The everyday meaning of "appropriate sanction" encompasses a monetary sanction. Imposing a financial penalty often will be the most effective and fair means of enforcing Rule 11 and deterring baseless suits. When imposed upon a lawyer, a financial penalty forces the lawyer rather than the client to bear the costs of violations of the rule. Monetary sanctions may be the most effective way to deter a powerful and wealthy party from bringing frivolous or vexatious litigation. The legitimacy of imposing monetary sanctions under Rule 11 has already been recognized. *See In re CURL*, 803 F.2d at 1007, *Cotner v. Hopkins*, 795 F.2d 900, 903 (10th Cir.1986) (fine cannot be total bar to plaintiff's access to courts; fine vacated because of improper procedure); *Glick v. Gutbrod*, 782 F.2d 754, 757 n. 3 (7th Cir.1986); *Hilgeford v. Peoples Bank*, 776 F.2d 176 (7th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1644, 90 L.Ed.2d 188 (1986); *Snyder v. IRS*, 596 F.Supp. 240, 252 (N.D.Ind.1984); *Young v. IRS*, 596 F.Supp. 141, 152 (N.D. Ind.1984); *Dore v. Schultz*, 582 F.Supp. 154 (S.D.N.Y.1984). We hold that monetary sanctions serve the purposes of Rule 11 and may be imposed as sanctions for Rule 11 violations in appropriate cases so

**6.** Apart from Rule 11, this court has previously recognized the inherent power of a court to impose reasonable and appropriate sanctions upon counsel for abusive litigation practices or for violations of procedural rules or court orders. *See, e.g., Carlucci v. Piper Aircraft Corp, Inc.*, 775 F.2d 1440, 1447 (11th Cir.1985); *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1208–11 (11th Cir.1985); *Flaksa v. Little River Marine Construction Co.*, 389 F.2d 885, 888 & n. 10 (5th Cir.), *cert. denied,* 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968); *Woodham v. American Cystoscope Company of Pelham, N.Y.*, 335 F.2d 551, 557 & n. 15 (5th Cir. 1964). The court has the power either to dismiss a case with prejudice or to enter a default judgment for failure to prosecute with reasonable diligence or for failure to comply with court orders or rules of procedure. *Flaksa*, 389 F.2d at 887; *see also Link v. Wabash Railroad Co.*, 370 U.S. 626, 629–33, 82 S.Ct. 1386, 1388–90, 8 L.Ed.2d 734 (1962).

These are drastic remedies, however, which are to be used only in extreme situations as the court has a wide range of lesser sanctions that will not deprive the litigant of his or her day in court. *Flaksa*, 389 F.2d at 888–89. A reasonable monetary sanction imposed upon an attorney can be one such alternative sanction since it may well be more appropriate than a sanction that penalizes the parties for the offenses of their counsel. *See, e.g., Kleiner*, 751 F.2d at

1209–10 (upholding a $50,000 fine against counsel for intentional misconduct imposed by district court under its inherent power to sanction attorneys practicing before it); *Miranda v. Southern Pacific Transportation Co.*, 710 F.2d 516, 521 (9th Cir.1983) (imposition, pursuant to local rule, of monetary sanction on attorney for violation of local rule governing procedural matters); *see also Burden v. Yates*, 644 F.2d 503, 505 (5th Cir. Unit B 1981) (recommending imposition of lesser sanctions such as costs or fines before imposing the greater sanction of dismissal).

**7.** Other sanctions may include an award of the amount of accrued interest lost because of delay in entering a state court judgment, *see Davis*, 765 F.2d at 500–01; requiring the errant attorney to circulate the court's opinion finding him in violation of Rule 11 to every member of his firm, *see Huettig & Schromm, Inc. v. Landscape Contractors Council*, 582 F.Supp. 1519, 1522–23 (N.D.Cal.1984), *aff'd,* 790 F.2d 1421 (9th Cir. 1986); suspension or disbarment from practice, *see In re Disciplinary Action CURL*, 803 F.2d 1004, 1005 (9th Cir.1986); or issuing a published or unpublished reprimand, *see Schwarzer, Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 201–02, 204 (1985). In addition, prior to the 1983 amendments, courts occasionally dismissed baseless claims or defenses. *See, e.g., Rhinehart v. Stauffer*, 638 F.2d 1169, 1171 (9th Cir.1979).

long as they are imposed in accordance with due process.

### B. *Procedural protections comporting with due process*

■ Attorneys and clients facing possible discipline under Rule 11 have interests qualifying for protection under the Due Process Clause of the Fifth Amendment. Procedural due process requires notice and an opportunity to be heard before any governmental deprivation of a property interest. *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). Determining what process is due in a Rule 11 case simply requires an application of familiar principles of due process: the timing and content of the notice and the nature of the hearing will depend upon an evaluation of all the circumstances and an appropriate accommodation of the competing interests involved. *See Goss v. Lopez,* 419 U.S. 565, 578–79, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961); *see also Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). No set rule can be stated to govern all Rule 11 cases; the standard is necessarily flexible to cover varying situations. The specific dictates of due process will be determined by the interaction of several factors. These factors include but are not limited to: the interests of attorneys and parties in having a specific sanction imposed only when justified; the risk of an erroneous imposition of sanctions under the procedures used and the probable value of additional notice and hearing; and the interests of the court in

efficiently monitoring the use of the judicial system and the fiscal and administrative burdens that additional procedural requirements would entail.[8] Providing due process will ensure that Rule 11 will not be applied arbitrarily, that erroneous application of the rule will be minimized, and that creative legal arguments and vigorous advocacy will not be stifled.

### 1. Criminal contempt procedures not required

■ Nothing in the text of Rule 11 or in the Advisory Committee Note indicates that due process requires a court to follow the procedures called for by Fed.R.Crim.P. 42(b) for criminal contempt proceedings before it can impose a monetary sanction pursuant to Rule 11. Both the note and policy considerations tend to the opposite conclusion. Although Rule 11 itself mandates no specific procedures to be followed when evaluating claims of Rule 11 violations, the note says explicitly that courts "must to the extent possible limit the scope of the sanction proceedings to the record." Such language does not support a general requirement that the procedures of Fed.R. Crim.P. 42(b) be followed every time a court considers imposing a monetary sanction.

In *Kleiner v. First National Bank of Atlanta* we explicitly rejected the argument that the punitive character of a monetary sanction imposed in a judicial disciplinary proceeding fixes the proceeding as one of criminal contempt, requiring the right to jury trial and analogous criminal procedural rights. *Kleiner,* 751 F.2d at 1209–10. A violation of Rule 11 is fundamentally different from an infraction of criminal contempt and therefore warrants different sanction proceedings.

The bar bears a special administrative responsibility in the judicial process inde-

---

**8.** The Supreme Court has laid down principles to guide courts in determining what process is due:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

> *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

pendent from the public at large. We frequently refer to attorneys as officers of the court. A monetary sanction for failure to carry out this special responsibility as an attorney differs from the more severe infractions of criminal contempt for which attorneys and members of the general public can become liable. The former is an unjustified failure to carry out an administrative responsibility as an officer of the court; the latter is an affront to the authority of the judge. *Miranda v. Southern Pacific Transp. Co.,* 710 F.2d 516, 519 (9th Cir.1983). "The court's power to impose appropriate sanctions on attorneys practicing before it 'springs from a different source than does the power to punish for criminal contempt.'" *Kleiner,* 751 F.2d at 1209 (citations omitted). 18 U.S.C. § 401 limits a court's criminal contempt power to three instances that are far narrower than the actions subject to sanction under Rule 11. Under § 401 a court of the United States may punish for "such contempt of its authority, and none other, as—(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2) Misbehavior of any of its officers in their official transactions; and (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." [9]

The Supreme Court has pointed out that when evaluating what process is due there comes a point when the benefit of an additional safeguard to the individual affected by the government action, and to society in terms of increased assurance that the action is just, may be outweighed by the cost. *Mathews,* 424 U.S. at 348, 96 S.Ct. at 909. To uniformly require courts to follow Fed. R.Crim.P. 42(b) procedures whenever they contemplate imposing a monetary sanction would create just that situation. The major goals of Rule 11 are to rid the courts of meritless litigation and to reduce the growing cost and burdensomeness of civil litigation. It would be counterproductive if the rule itself were to cause an increase in unnecessary litigation by mandating extensive collateral procedures as prerequisites to the imposition of sanctions. The amendments to Rule 11 were intended to encourage judges to use the rule and to eliminate their reluctance to sanction lawyers who abuse the litigation process. Advisory Committee Note. The fear of spawning satellite litigation was one cause of the reluctance of judges to impose sanctions under the pre-amendment rule. If judges are required to engage in unnecessarily extensive hearings, and in effect conduct a second trial on every issue of sanctions and create the possibility of a jury trial for any monetary sanction however small, they will often refrain from imposing sanctions and the vitality of amended Rule 11 will be drained away. It is not necessary to follow the procedures required in criminal contempt proceedings in every case to insure that the imposition of a monetary sanction is justified; less extensive procedures will generally protect the individual interests involved without undermining Rule 11.[10]

### 2. What process is due: notice and hearing

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Due process requires that the attorney (or party where applicable) has fair notice of the possible imposi-

**9.** If the imposition of fines under Rule 11 were to constitute a finding of criminal contempt, arguably the rule might violate the Rules Enabling Act by expanding the substantive law of actions subject to criminal contempt because the action or failure sanctioned under Rule 11 might not constitute "misbehavior" under § 401.

**10.** It may be that the monetary sanction being considered in a specific case is so severe in amount or so arguably unrelated to the misconduct that due process will require extensive due process safeguards as prerequisites to its imposition. This, however, is very different from requiring that such procedures precede *every* imposition of monetary sanctions. *See* text, section B.2 for discussion of what process is due.

tion of Rule 11 sanctions and of the reasons for their imposition. The existence of Rule 11 itself constitutes a form of notice since the rule imposes an affirmative duty on an attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed; an attorney could not assert that he or she had no notice or knowledge of the standards of conduct that the rule itself provides.[11]

■■■■ The responsibilities of the attorney are emphasized by the rule; since proof of bad faith is no longer required, the amended rule holds attorneys to a higher standard than did the prior version of Rule 11. If an attorney is said to have submitted a complaint without any basis in fact, Rule 11 alone should constitute sufficient notice of the attorney's responsibilities since the rule explicitly requires the attorney to certify that a complaint is well grounded in fact. On the other hand, questions of whether an attorney made a good faith argument under the law or whether an attorney interposed a pleading, motion, or other paper for an improper purpose are more ambiguous and may require more specific notice of the reasons for contemplating sanctions. If sanctions are proposed to be imposed on the client, due process will demand more specific notice because the client is likely unaware of the existence of Rule 11 and should be given the opportunity to prepare a defense.

■■■■ An attorney or party should be given early notice that his or her conduct may warrant Rule 11 sanctions. Early notice can deter continuing violations, thereby saving monetary and judicial resources. *Matter of Yagman, Brown and Fleischer v. Baden,* 796 F.2d 1165, 1184 (9th Cir.), *reh'g denied,* 803 F.2d 1085 (1986). The Advisory Committee Note instructs a party seeking sanctions to "give notice to the court and the offending party promptly upon discovering a basis for doing so;" a failure to do so may result in a corresponding reduction in the amount of any costs and attorneys' fees awarded.

Notice can come from the party seeking sanctions, or from the court, or from both. We see no basis for requiring that in all instances notice be in writing and with the formality of pleadings. But to avoid misunderstanding and permit appellate review, the notice given, or evidence of the giving of notice, should be made a part of the record.

■■■■ The accused must be given an opportunity to respond, orally or in writing as may be appropriate, to the invocation of Rule 11 and to justify his or her actions. Rule 11 does not require that a hearing separate from trial or other pretrial hearings be held on Rule 11 charges before sanctions can be imposed; indeed the Advisory Committee Note indicates that the contrary is preferable:[12]

---

**11.** "The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party to have of the consequences of his own conduct." *Link,* 370 U.S. at 632, 82 S.Ct. at 1389–90, *quoted in Carlucci,* 775 F.2d at 1452.

**12.** Several courts have found that a separate hearing is not a prerequisite to the imposition of Rule 11 sanctions. *See, e.g., Oliveri v. Thompson,* 803 F.2d 1265, 1280 (2d Cir.1986) (due process does not mean, necessarily, that an evidentiary hearing must be held; here the judge's participation in the proceedings provided him with full knowledge of the relevant facts and therefore the procedures followed by the district court did not violate due process); *Brown v. National Board of Medical Examiners,* 800 F.2d 168 (7th Cir.1986) (court need not hold a hearing when Rule 11 sanctions are based on counsel's incompetence in handling the matter; due

process rights not violated because the district court, after imposing sanctions, allowed attorney five days to respond and subsequently entertained a reconsideration motion accompanied by full briefing); *Roberts v. Ace Hardware, Inc.,* 779 F.2d 52 (6th Cir.1985) (Rule 11 does not require a hearing before imposition of sanctions; because the attorney had filed a response to the Rule 11 motion and it was clear from the documents before the court that post-judgment motions had no merit, no further hearing was necessary); *Davis,* 765 F.2d at 496; 500 & n. 12 (after hearing on whether case should be remanded to state court, the district court held that sanctions were warranted because of bad faith filing of removal petition by attorney; appellate court affirmed award of sanctions finding evidentiary hearing as to amount of attorneys' fees not required; counsel given nearly two months to respond to parties' affidavits and chose to remain mute so he could not complain about the lack of an evidentiary hearing).

To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of the sanction proceedings to the record. Thus, discovery should be conducted only by leave of court, and then only in extraordinary circumstances.

Advisory Committee Note. Whether and to what extent additional hearing is required will vary depending upon the nature of the case. The Advisory Committee Note indicates some of the matters to be considered: (1) the circumstances in general; (2) the type and severity of the sanction under consideration; and (3) the judge's participation in the proceedings, the judge's knowledge of the facts, and whether there is need for further inquiry. The Advisory Committee Note observes that "[i]n many situations the judge's participation in the proceedings provides him with full knowledge of the relevant facts and little further inquiry will be necessary." [13]

When an attorney has failed to present necessary factual support for claims despite several opportunities to do so, for example, further hearing on the sanctions issue may well be not only unnecessary but also a waste of judicial resources. On the other hand, when a court is asked to resolve an issue of credibility or to determine whether a good faith argument can be made for the legal position taken, the risk of an erroneous imposition of sanctions under limited procedures and the probable value of additional hearing are likely to be greater. Prior opportunities to respond to Rule 11 charges will also influence the extent to which further hearing is necessary.

> The Supreme Court has said that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). This same principle applies when attorneys' fees and other sanctions are imposed under Rule 11.

**13.** Assertions of Rule 11 violations are often made in connection with a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary

As mentioned by the Advisory Committee, the type and severity of the sanction are necessary elements in the calculus. The more serious the possible sanction both in absolute size and in relation to actual expenditures, the more process that will be due.

Some cautions are in order. Rule 11 does not change the liberal notice pleading regime of the federal courts or the requirement of Fed.R.Civ.P. 8, which demands only a "short and plain statement of the claim." The rule does not require that pleadings allege all material facts or the exact articulation of the legal theories upon which the case will be based. The reasonable inquiry standard of Rule 11 does not preclude plaintiffs from establishing the merits of claims through discovery. Nor is Rule 11 intended to chill innovative theories and vigorous advocacy that bring about vital and positive changes in the law. The rule should not be used to deter potentially controversial or unpopular suits. It does not mean the end of doctrinal development, novel legal arguments, or cases of first impression. The Advisory Committee Note specifies that the rule "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Nor does Rule 11 impinge upon the right of indigent criminal defendants to appointment of counsel, *see Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 733 (1963), and counsel's obligation to represent the client to the best of his or her abilities.

REVERSED.

HILL, Circuit Judge, specially concurring:

I concur in the judgment reversing the judgment of the district court, but not for the reasons given.

> judgment. The court frequently may be able to evaluate the Rule 11 issue in the course of examining and ruling on the factual and legal merits of a motion to dismiss or for summary judgment without any further proceedings. But the potential target of sanctions must have notice that sanctions are contemplated and of what his or her alleged deficiency is, and have a reasonable opportunity to contest and explain.

This case is almost a carbon copy of *Dykes v. Hosemann*, 743 F.2d 1488 (11th Cir.1984), *rev'd. in part*, 776 F.2d 942 (en banc), *modified on rehearing*, 783 F.2d 1000 (11th Cir.1986). In both cases, a party to a domestic relations dispute asserted that state court officials and others conspired to produce a judgment in state court adverse to the interests of the federal claimant.[1] Both cases presented barebones allegations of conspiracy and other wrongdoing. In both cases all defendants unconditionally denied participating in any conspiracy or wrongdoing.

The plaintiff's case in *Dykes* was dismissed after the parties had engaged in extensive discovery. In fact they produced some 10,000 pages of disposition testimony, which the district court carefully evaluated before granting the defendant's motion for summary judgment. None of it contained any direct evidence of conspiracy. Yet, we reversed the district court's grant of summary judgment, holding, apparently, that conspiracy could be inferred from the lawful actions of state officials.[2] I dissented from the two panel opinions in *Dykes* because I agreed with the district judge that the plaintiff's allegations were totally without support in the record. *Id.*, 743 F.2d at 1500 (Hill, C.J., dissenting); 783 F.2d at 1000 (Hill, C.J., dissenting).

At this point, Jurldine Donaldson's proofs of conspiracy are no weaker than those offered by the plaintiff in *Dykes*. Both asserted that conspiracy may be inferred solely from the fact that state officials carried out a series of lawful acts. Indeed, if there is a distinction between the two cases, it is that Ms. Donaldson's case for conspiracy may prove stronger than Ms. Dykes', were she allowed to proceed with discovery. Yet here Ms. Donaldson's attorney is potentially subject to Rule 11

sanctions, for simply filing a case that the opinion in *Dykes* authorized.

The result in *Dykes* and the result here are so dramatically different they can not sit together comfortably in the same circuit. I would prefer that we take this opportunity, en banc, to correct *Dykes*. However, while that case is good law in this circuit we ought not subject an attorney who follows it to the extreme sanctions of Rule 11. What we held to be the proper work of a lawyer in *Dykes* may be found to be near contempt in this case, and yet the difference between the two cases escapes me.

I do not take issue with the extensive discussion of Rule 11 which forms part III of this opinion. It is a valuable guide for lawyers, judges and others who need confront Rule 11 in the future. I would simply reverse the district court's award of sanctions in this case, and not leave it open on remand. Given our opinion in *Dykes*, Rule 11 has no role to play in this case.

JOHNSON, Circuit Judge, specially concurring, in which TJOFLAT, KRAVITCH, and HATCHETT, Circuit Judges, join:

Although I agree in the main with the majority's opinion, I write separately to highlight a couple of my concerns. First, I wish to emphasize that, under certain circumstances, courts may have to follow the procedures set forth in Fed.R.Crim.P. 42(b) when imposing sanctions under Rule 11. As the majority indicates, monetary sanctions imposed for an attorney's failure to carry out his responsibilities as an officer of the court generally have been viewed as differing "from the more severe infractions of criminal contempt." *Miranda v. Southern Pacific Transportation Co.*, 710 F.2d 516, 521 (9th Cir.1983). Thus, courts often can impose those sanctions without the full panoply of procedural rights called for in

---

1. *Dykes* involved a child custody case, and this case stems from the Donaldsons' divorce proceeding, but there the distinction ends. As I stated in my dissent from the original panel opinion in *Dykes*, "If there are any cases where conclusory allegations of conspiracy and wrongdoing are likely to be made against a judge and other persons involved in the dispute, they are cases such as this, where the strongest emotions

of both parties are unleashed." *Dykes*, 743 F.2d at 1501–1502.

2. The en banc court did hold that the judge who was sued in *Dykes* was absolutely immune. However, the panel, upon rehearing, allowed the case to proceed against the other appellees, save one. *Id.* 783 F.2d at 1000.

Rule 42(b). Nonetheless, such sanctions can assume the criminal character of a fine as, for instance, when their amount is grossly disproportionate to the attorney's misconduct. *Matter of Yagman,* 796 F.2d 1165, 1180–81 (9th Cir.1986). Additional due process safeguards are necessary under those circumstances. Those additional safeguards should parallel the procedures provided for in Rule 42(b).

Admittedly in *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193, 1209–10 (11th Cir.1985), we held that a monetary sanction imposed on an attorney in a judicial disciplinary hearing was not a penalty for criminal contempt even though it bore all the indicia of being so. However, that decision did not foreclose the possibility that under certain circumstances the imposition of such a sanction might need to comport with the procedures set forth in Rule 42(b). In affirming the sanction, the court determined that the size of the fine was commensurate with the attorney's misconduct. *Id.* at 1210. Thus *Kliener* does not speak directly to situations where, as discussed in *Yagman,* such sanctions parallel a penalty for criminal contempt.

I do not read the majority's opinion as excluding the possibility that in those circumstances a court may have to follow the procedures set forth in Rule 42(b). Nonetheless, I believe that this point bears special emphasis lest the specter of satellite litigation trample the due process rights that the targets of judicial sanctions undeniably possess.

Second, I wish to emphasize that the district court's summary method of sanctioning plaintiff's counsel violated due process. The majority correctly points out that due process requires that an attorney must have fair notice of the possible imposition of Rule 11 sanctions and an opportunity to respond to the invocation of Rule 11. The majority also points out that, in ruling on a Rule 56 motion for summary judgment, a court may be able to decide without further proceedings whether to impose Rule 11 sanctions as long as the attorney had notice that sanctions are contemplated and had a reasonable opportunity to

"contest and explain." That opportunity to contest and explain, however, must be more than the opportunity to submit material in support of or in opposition to a motion for summary judgment, for a court cannot sanction an attorney under Rule 11 simply because his client failed to prevail on a motion for summary judgment. Instead, the court must determine whether, at the time the complaint or motion was filed, the attorney believed after objectively reasonable inquiry that the complaint or motion was well grounded in fact. *See, e.g., Hashemi v. Campaigner Publications, Inc.,* 784 F.2d 1581, 1583 (11th Cir. 1986). A court cannot reliably make that determination simply on the basis of the material submitted in connection with a motion for summary judgment. Therefore, before a court imposes Rule 11 sanctions on an attorney, that attorney must be allowed to explain why he reasonably believed that the complaint or motion was well grounded in fact.

As the majority's recitation of the facts indicates, the district court here denied plaintiff's counsel an adequate opportunity to contest, either orally or in writing, the imposition of Rule 11 sanctions and to explain his actions. The court sanctioned plaintiff's counsel ostensibly because the complaint was not well grounded in fact. However, the only hearing the court conducted was commenced to discuss the defendants' motions to dismiss the complaint for failure to state a claim. During that hearing the court's focus did shift to the question of whether there was any factual basis for the complaint. Nonetheless, plaintiff's counsel had no notice that that question would be discussed and thus had no opportunity to prepare his position. Near the close of the hearing, the court instructed plaintiff's counsel to submit personal financial statements for use in the event the court decided to impose sanctions under Rule 11. Although that instruction notified plaintiff's counsel that the court was considering imposing sanctions, the court did not request plaintiff's counsel to make any submission opposing the imposition of sanctions. Nor did the court indicate that it would entertain any such sub-

missions. Furthermore, between the hearing and the entry of its order imposing sanctions approximately one month later, the court did not comment on the matter of sanctions. Finally, after entering that order, the court did not allow plaintiff's counsel any opportunity to respond. Such summary procedures contravene the principles of due process the majority espouses.

That Rule 11 does not require a separate evidentiary hearing in every case before sanctions can be imposed does not alter my assessment of the district court's actions. In all of the cases the majority cites for the proposition that a separate evidentiary hearing is unnecessary, the sanctioned party had an opportunity to contest and explain his actions. In fact in *Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir. 1986), *cert. denied sub nom. County of Suffolk v. Graseck*, — U.S. —, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987), the court stated that, although Rule 11 does not mandate a separate evidentiary hearing, "notice and an opportunity to be heard is required." Thus, although an effective opportunity to contest and explain does not always necessitate a separate, full-blown evidentiary hearing, there must be some reasonable opportunity to challenge the imposition of Rule 11 sanctions.

With these clarifying comments, I concur in the opinion of the court.