AETNA INSURANCE COMPANY, Plaintiff–Appellee,

v.

Thomas MEEKER, Defendant–Appellant.

AETNA INSURANCE COMPANY, Plaintiff–Appellee,

v.

Thomas MEEKER, Defendant,

and

Peter G. Williams, Appellant.

Thomas MEEKER, Plaintiff,

and

Peter G. Williams, Appellant,

v.

AETNA INSURANCE COMPANY a/k/a Cigna Property and Casualty Insurance Company, Defendant–Appellee.

Nos. 90–3842, 90–4109.

United States Court of Appeals, Eleventh Circuit.

Feb. 19, 1992.

Peter G. Williams, Columbus, Ga., for Thomas Meeker.

William H. Clark, Clark, Partington, Hart, Larry, Bond, Stackhouse & Stone, Pensacola, Fla., J. Hodge Alves, III, Blane H. Crutchfield, G. Hamp Uzzelle, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for Aetna Ins. Co.

Peter G. Williams, pro se.

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

Before KRAVITCH and BIRCH, Circuit Judges, and KAUFMAN,* Senior District Judge.

FRANK A. KAUFMAN, Senior District Judge:

In Case No. 90-3842, appellant Williams, an attorney, appeals from the district court's assessment of sanctions against him for violation of Rule 11 of the Federal Rules of Civil Procedure. In Case No. 90-4109, consolidated for purposes of the within appeal with Case No. 90-3842, Williams appeals from the district court's determination of reasonable attorney's fees, as ordered by this Court under Rule 38 of the Federal Rules of Appellate Procedure. Both appeals arise from appellant's representation of Thomas Meeker in civil actions involving an insurance coverage dispute between Meeker and Aetna Insurance Company (Aetna), now CIGNA Property and Casualty Insurance Company.

## I.

On October 8, 1987, Meeker obtained from Aetna a marine insurance policy covering a sailboat named the Head First. When the Head First sank less than three weeks later on October 23, 1987, Meeker sought to collect for this loss under his insurance policy with Aetna. Concerned as to whether Meeker was the lawful owner of the Head First and as to whether the boat's sinking was accidental, Aetna filed a complaint for declaratory judgment against Meeker in the United States District Court for the Middle District of Alabama, seeking a determination of its obligations. On February 22, 1988, Meeker commenced a damage suit against Aetna in a Georgia state court, alleging that Aetna was denying coverage in bad faith. Meeker's said state court action was removed by Aetna to a Georgia federal district court. Thereafter,

both the Alabama and Georgia federal actions were transferred by the Alabama and Georgia federal district courts to the United States District Court for the Northern District of Florida and consolidated. On June 3, 1988, after Aetna amended its complaint in the said consolidated Florida federal case, Meeker filed counterclaims against Aetna, alleging bad faith breach of Aetna's insurance obligations, negligent salvage and conversion.

On October 17, 1988, Aetna moved for summary judgment as to its declaratory judgment action and as to Meeker's claims and counterclaims against it. Aetna provided numerous affidavits, deposition excerpts and other evidentiary materials supporting its claims that the Head First was a stolen vessel which had been intentionally sunk, that Aetna was not negligent in the salvage of the Head First, and that Aetna was the present sole lawful owner of the Head First. On July 21, 1988, Meeker was indicted in the United States District Court for the Middle District of Alabama on two counts of mail fraud and one count of wire fraud for his allegedly fraudulent attempt to obtain insurance proceeds for the sinking of the Head First. On November 18, 1988, a criminal information was filed in the Circuit Court of Bay County, Florida, charging Meeker with insurance fraud and possession of a vessel with an altered identification number and perjury. In two separate cases, Meeker was also charged in that state court with grand theft and dealing in stolen property.

On November 15, 1988, Meeker filed, in the Florida federal civil case, an opposition to Aetna's motion for summary judgment, arguing that there was "absolutely no evidence" for Aetna's claims that Meeker provided false information with respect to his insurance application, that Meeker did not own the Head First, or that the Head First was sunk intentionally.[1] On March 17, 1989, Meeker was convicted in the federal criminal case in Alabama on the mail and wire fraud charges brought against him concerning his insurance claim. On March

22, 1989, Meeker pleaded *nolo contendere* to the count of insurance fraud brought against him in Florida state court.

On May 16, 1989, Aetna, in the Florida federal civil case, moved for leave to file a supplemental motion for summary judgment in order to present evidence of Meeker's convictions in Alabama and Florida. Meeker moved to strike several of the affidavits and also an investigative report filed by Aetna, on the grounds that such documents were "replete with hearsay" and "have no probative value."[2] The court below denied Meeker's motion to strike on August 3, 1989, and granted Aetna's motion for summary judgment on August 8, 1989. In its summary judgment Order the district court further determined that the record strongly suggested that as of August, 1988, appellant should have known that there was no factual basis for his client's counterclaims and that appellant nonetheless signed Meeker's opposition to Aetna's motion for summary judgment on or about November 15, 1988. The district court thereupon *sua sponte* ordered appellant to show cause within thirty days why Rule 11 sanctions should not be imposed upon him, but then later stayed the issue of Rule 11 sanctions pending appeal. Upon appeal, this Court affirmed the lower court's summary judgment ruling. The district court then held an evidentiary hearing with regard to the issue of Rule 11 sanctions and on August 9, 1990, awarded sanctions against appellant in the amount of $9,191.57.

Aetna moved this Court for an award of damages, pursuant to Rule 38 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 1927, for the filing and maintenance of a frivolous appeal by Meeker and his counsel. On August 16, 1990, this Court granted Aetna's Rule 38 motion and remanded the case to the district court for a determination of reasonable attorney's fees. On remand, the district court awarded Aetna $8,439.58 as reasonable attorney's fees and expenses.

---

1. Meeker's Brief in Opposition to Plaintiff's Motion for Summary Judgment at 2.

2. Meeker's Brief in Support of Defendant's Motion to Strike at 1.

Williams here appeals from the district court's award of Rule 11 sanctions and from its determination of reasonable attorney's fees pursuant to this Court's award under Rule 38. The issues presently before this Court are (1) whether the district court abused its discretion in imposing Rule 11 sanctions upon Williams for opposing Aetna's motion for summary judgment as to Meeker's counterclaims, (2) whether the district court's award of $9,191.57 for the Rule 11 violations was excessive and (3) whether the district court erred in failing to hold an evidentiary hearing and to state explicitly its findings of fact and conclusions of law when determining reasonable attorney's fees in connection with the Rule 38 award.

## II.

Rule 11 of the Federal Rules of Civil Procedure, in its present form, provides in pertinent part:

[e]very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name ... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

The standard for testing conduct under that rule is the objective standard of " 'reasonableness under the circumstances,' a standard 'more stringent than the original good-faith formula.' " *U.S. v. Milam*, 855 F.2d 739, 743 (11th Cir.1988) (*quoting Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir.1987) (en banc)). In deciding whether the signer or the represented party has violated present Rule 11, a federal district court is required to evaluate whether the motion, pleading or other paper reflected what could reasonably have been believed by the signer at the time of signing. *See Threaf Properties v. Title Ins. Co. of Minnesota*, 875 F.2d 831, 835 (11th Cir. 1989); FED.R.CIV.P. 11 advisory committee's note. Relevant circumstances include

how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

FED.R.CIV.P. 11 advisory committee's note. "Whether (1) factual or (2) dilatory or bad faith reasons exist to impose Rule 11 sanctions is for the district court to decide subject to review for abuse of discretion; on the other hand, a decision whether a pleading or motion is legally sufficient involves a question of law subject to *de novo* review by this court." *Donaldson*, 819 F.2d at 1556 (footnote omitted).

In its August 9, 1990 Order[3], the district court awarded sanctions against Williams on the grounds that after August, 1988, there was no factual basis for Williams' continued pursuit of Meeker's allegations of bad faith denial of insurance coverage, negligent salvage and conversion. In its

---

**3.** Before that Order was issued, Williams received more minimum due process protection than Rule 11 and applicable case law require since he was afforded an evidentiary hearing and was notified of possible sanctions one year before they were finally imposed. *See Donaldson*, 819 F.2d at 1560–61.

Order imposing Rule 11 sanctions on Williams, the district court concluded that although there might have been some factual basis for Williams' initial pursuit of Meeker's bad faith coverage counterclaim [4], after August, 1988, "it was impossible to continue to argue reasonably that Aetna's denial of Meeker's insurance claim was in bad faith, or even unreasonable." Order at 17 (August 9, 1990). The district court determined that Williams violated Rule 11 on November 15, 1988,[5] when he signed and filed Meeker's opposition to Aetna's motion for summary judgment with regard to Meeker's counterclaims and alleged in support of the bad faith counterclaim that there was "simply no evidence" that the Head First was sunk intentionally.[6] The district court also determined that Williams' explanation of why Meeker had no papers authenticating his purchase of the Head First and his explanation of how the boat sunk were "implausible" and "incredible," respectively.

In imposing sanctions upon Williams, the district court relied upon the fact that by August, 1988, various investigative reports[7] of the raised vessel indicated that the Head First had been both stolen and intentionally sunk, and that by that date Meeker had been indicted in the United States District Court for the Middle District of Alabama upon two counts of mail fraud and one count of wire fraud. In Williams' response to the district court's Order to show cause why sanctions should not be imposed, Williams again urged that the bad faith cause of action was warranted, among other reasons, because "there is absolutely no evidence in the record that the sinking was anything but accidental."[8]

█ In our view, the district court did not abuse its discretion in determining that Williams' urging of Meeker's counterclaim of bad faith after August, 1988, had no basis in fact and thereby violated Rule 11. The record reveals no evidence that Aetna, after that date, was denying Meeker's insurance claim in bad faith. Williams' continued assertion of Meeker's bad faith counterclaim after August, 1988, and his continued position that there was "no evidence" that the Head First was intentionally sunk could not have appeared to a reasonable person to be "well grounded in fact", "under the circumstances." FED. R.CIV.P. 11; *U.S. v. Milam,* 855 F.2d at 743.

█ The district court concluded that Meeker's counterclaim for negligent salvage had no basis in fact or in law, and stated that although the applicable admiralty law allows claims against salvors for negligent salvage, the record clearly showed that the salvors hired by Aetna

---

**4.** The district court awarded sanctions against Williams on the basis of his pursuit of Meeker's counterclaims, not on the basis of Williams' opposition to Aetna's declaratory judgment action with respect to the main insurance claim. The district court determined that it might have been possible, "albeit barely possible," that Williams believed that there were genuine issues of fact concerning the questions of what caused the Head First to sink and whether the Head First was a stolen vessel.

**5.** The district court in its August 9, 1990, Rule 11 Order wrote:

If Williams should have known his claims were groundless in August of 1988, his violation of Rule 11 began when he next filed a signed "pleading, motion, or other paper" relating to those claims—November 15, 1989, the date he filed Meeker's "Brief in Opposition" to Aetna's motion for summary judgment, along with a motion to strike, and other "papers." Therefore, any sanctions imposed against Williams regarding lack of factual ba-

sis for opposing Aetna's motion for summary judgment will be measured from November 15, 1989.

The record indicates that Meeker's opposition to Aetna's motion for summary judgment was filed on November 15, 1988, and that Meeker was indicted in Alabama in July, 1988. This Court therefore understands the district court to mean that Williams violated Rule 11 in November, 1988, and that the district court measured Williams' sanctions from that date.

**6.** Williams submitted affidavits in support of Meeker's opposition to Aetna's motion for summary judgment but they addressed only the issue of whether there was a material issue of fact in the declaratory judgment action and did not support Meeker's bad faith claim against Aetna.

**7.** One of those reports was an independent investigation by the Florida Marine Patrol.

**8.** Meeker's Response to Rule to Show Cause at 6.

were not agents of Aetna but independent contractors. Accordingly, the district court held that Aetna could be responsible for negligent salvage only if the salvors which Aetna hired were unqualified. At the Rule 11 hearing, the district court found that the salvors hired by Aetna were specialists in mid-ocean salvage of military ships and airplanes and were therefore qualified. Meeker's opposition to Aetna's motion for summary judgment did not address whether the salvors were Aetna's agents or whether they were qualified. At the Rule 11 hearing, moreover, Williams did not dispute that the salvors possessed and employed the best equipment, were well qualified, and used standard methods to raise the Head First. Williams' sole argument in Meeker's opposition brief was that the Head First appeared damaged after it was raised. We agree with the district court that Meeker's opposition to Aetna's motion for summary judgment and the district court's findings at the Rule 11 hearing establish that Williams' assertion of Meeker's negligent salvage counterclaim was not based upon a "reasonable inquiry" into the relevant facts and law. Accordingly, we hold that the district court did not abuse its discretion in awarding sanctions with regard to Williams' pursuit of the negligent salvage counterclaim.

The district court concluded that Meeker's conversion counterclaim was legally and factually frivolous. The salvage operations of the Head First were conducted by agreement between Meeker and Aetna and in accordance with court mandated procedures. The district court found that Meeker impliedly consented to the salvage operations undertaken by Aetna by agreeing to help locate the vessel, by being on board during one of the unsuccessful salvage attempts, and by witnessing the actual raising of the vessel.[9] After the vessel was raised, the Florida Marine Patrol intervened, took jurisdiction over the sailboat and restricted access to the boat until further notice. Thereafter the sailboat was stored in a boatyard in Panama City, Flor-

ida, at Aetna's expense. The court Order with regard to the salvage operation stated that the parties were to leave the vessel in possession of the marine facility to which it was taken until further order of the court. In its Order granting summary judgment, the district court found that the Head First was actually another vessel and that Aetna had acquired title from the vessel's rightful owners. On November 7, 1988, the district court accordingly authorized Aetna to sell the wreck, all interested parties having had prior opportunity properly to survey the Head First.

Meeker has contended that he never implicitly or expressly abandoned the vessel, and that by keeping the vessel in storage in the Panama City boatyard, Aetna wrongfully deprived Meeker of the use and salvage value of the Head First. The district court concluded that Meeker's claim had no basis in fact because Meeker was not the lawful owner of the Head First, and had no basis in law because even if Meeker was the lawful owner, admiralty law with respect to salvage dictates that Meeker did not have a right to immediate possession of the vessel. The district court determined that a salvor has the right of possession of the salvaged property, even as against the owner, until the owner pays the salvor a salvage fee or posts security for the vessel's release or has the vessel placed under the jurisdiction of the admiralty court through a marshal's attachment. Since Meeker did not protect his interest in any such way, the district court emphasized that even the least research into the law of salvage would have revealed that Meeker had no right to immediate possession.

This Court agrees with the district court that Meeker's counterclaim for conversion had no basis in fact or in law, and holds that the district court did not abuse its discretion in sanctioning Williams for continuing to assert the conversion counterclaim on and after November 15, 1988, when there existed no basis for that claim. Reviewing, *de novo*, the district court's conclusion that there was no legal basis for

9. Meeker's attempts to help locate the vessel consisted solely of supplying Aetna with scant and incorrect information regarding the location of the vessel.

Meeker's conversion claim, this Court concludes, as the district court did, that even a cursory review of admiralty salvage law would have revealed that Meeker had no viable claim for conversion. *See* 3A Martin Norris, Benedict on Admiralty § 129 (7th ed. 1988) (and cases cited thereat). The district court therefore properly sanctioned Williams under Rule 11 for pursuing Meeker's conversion counterclaim against Aetna.

### III.

█ Williams claims that the trial court's award of $9,191.57 in Rule 11 sanctions was excessive and unrelated to any claim of expense or fee incurred by Aetna. The type and the amount of sanction imposed calls for the proper exercise of a district court's discretion. *See Donaldson*, 819 F.2d at 1557; *see also Eastway Construction Corp. v. City of New York*, 821 F.2d 121, 122–23 (2nd Cir.1987), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). Rule 11 sanctions may be imposed for the purpose of deterrence, compensation and punishment. 6 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Fed.Prac. and Proc. § 1336 (2d ed. 1990). The question presented therefore is whether the district court abused its discretion in awarding sanctions in the amount of $9,191.57.

The district court determined that Williams violated Rule 11 by opposing the summary judgment motion with regard to the bad faith, negligent salvage and conversion counterclaims, but stated that the amount of sanctions should be limited to the expenses incurred by Aetna in defending those three counterclaims and that Williams should not be sanctioned for defending Meeker in connection with Aetna's quest for a declaratory decree. Aetna submitted that its total district court litigation expenses after August, 1988, were $45,957.84. The district court reduced that amount by 80% and sanctioned Williams only $9,191.57 on the basis that the bulk of Aetna's expenses were generated by Aetna's pursuit of declaratory relief.

We find reasonable the district court's assessment of sanctions as related to Aetna's relevant litigation expenses, and in no way an abuse of discretion.

### IV.

On August 16, 1990, this Court granted Aetna's motion for award of damages pursuant to Fed.R.App.P. 38 and remanded the matter to the district court for determination of a reasonable attorney's fee under the standards stated in *Marable v. Walker*, 704 F.2d 1219 (11th Cir.1983). Williams argues that the district court erred, on remand, in failing to hold an evidentiary hearing and in failing to state explicit findings of fact and conclusions of law in its Order determining reasonable fees.

In *Marable*, this Court vacated a district court's Order of attorney's fees because the court below had refused to hold a requested evidentiary hearing and had reduced without clear legal basis both the sought hourly rate and the claimed number of billable hours. In so doing, this Court wrote:

> [t]his Court has consistently required district courts to conduct evidentiary hearings, *King v. McCord*, 621 F.2d 205 (5th Cir.1980) and to enter specific findings of fact and conclusions of law in rendering fee awards where disputes cannot be otherwise resolved.

*Marable*, 704 F.2d at 1222. In *King v. McCord*, *supra* at 207, the Fifth Circuit had vacated an award of attorney's fees because the district court had not held a requested evidentiary hearing and because the basis for the award could not be clearly discerned from the record in the district court.

As appellees assert, this case is distinguishable on its facts from both *Marable* and *King*. Herein, Williams did not request an evidentiary hearing or controvert the affidavits submitted by Aetna's counsel. The district court, moreover, did not reduce or augment the attorney's fees and expenses which were clearly catalogued and apportioned in the appellee's affidavits. In *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988), this Court wrote that its

predecessor held that where an evidentiary hearing was requested, where there were disputes of fact, and where the written record was not sufficiently clear to allow the trial court to resolve the disputes of fact, it was an abuse of discretion to make an award without holding an evidentiary hearing.

In *Norman*, however, this Court also noted that cases such as *King* and *Marable*

should not be read to suggest that an evidentiary hearing is necessary every time the written pleadings present a dispute of opinions on matters as to which the courts possess expertise. Such matters might include the reasonableness of the fee, the reasonableness of the hours and the significance of outcome.

*Id.* at 1304.

█ Where, as in this case, appellant did not request an evidentiary hearing and did not controvert appellee's affidavits which contained detailed information concerning the amount and the type of legal services provided by appellee's counsel, the district court did not abuse its discretion in failing to hold an evidentiary hearing.

Although the district court has broad discretion in determining attorney's fees, the district court's Order and the record before that court must together make possible meaningful appellate review. *Norman*, 836 F.2d at 1304; *Marable*, 704 F.2d at 1222. In this case, the district court merely stated the amount of attorney's fees granted. Ordinarily, such a conclusory statement would not be sufficient to allow for meaningful appellate review. However, in this instance, the ample record below which the district court's Order referenced, allows this Court readily to verify that the district court's assessment of attorney's fees was reasonable.

Accordingly, this Court holds that the district court did not abuse its discretion in determining attorney's fees without stating explicit findings of fact and conclusions of law since, as noted above, appellant failed to raise disputed issues of fact and since the basis and the manner in which the fees were assessed by the district court is clear from the record. Nevertheless, this Court emphasizes that the best practice calls for a district court to make explicit findings of fact and conclusions of law in supporting any Order setting attorney's fees.

AFFIRMED.